WILLIAMS *v.* STATE.

*(Knoxville,* September Term, 1950.)

Opinion filed December 9, 1950.

THOMAS CRUTCHFIELD and L. D. MILLER, JR., both of Chattanooga, for plaintiff in error.

J. MALCOLM SHULL, Asst. Atty. Gen., for the State.

MR. JUSTICE PREWITT delivered the opinion of the Court.

This is an appeal from a conviction of murder in the first degree with punishment fixed at death by electrocution.

The defendant shot and killed another Negro, Horace Wilson, on the night of November 11, 1949. The deceased's death resulted by being shot in the back by the defendant with a .410 gauge shotgun. There is little controversy as to the facts.

On the evening of the shooting, the defendant and the deceased were engaged in a crap game. A controversy arose as to whether a dollar involved in a throw of the dice belonged to the defendant or to the deceased. The state's proof shows that the defendant told the deceased that he was going home and get his gun and kill him. The witness Sam Jones, brother-in-law of the defendant, testified that he went to the home of the defendant and got the gun for the purpose of keeping it from the defendant. There is proof, however, that defendant did get the gun from his brother-in-law and found the deceased in front of his home. According to the defendant's own testimony, he again demanded that the deceased give him his dollar. The state's evidence is that the defendant shot the deceased between the shoulder blades at very close range. The record clearly shows that the defendant had been drinking considerably during the afternoon and evening. The defendant testified that the deceased had drawn a dagger on him before and had threatened him at the time of the shooting; that at the time the deceased was coming on him with his knife "like that", the defendant also testified that he thought his life was

in danger and that while he could see both hands of the deceased, he did not know whether he had a knife or gun. His explanation for shooting the deceased in the back is that when he was in the act of firing, the deceased suddenly turned his back to him.

The case as made out by the state is one of murder in the first degree if believed by the jury. However, it appears that after the Court had fully charged the jury and it had deliberated approximately an hour and a half, they returned to the courtroom and asked: "If we give this man a sentence for a term of years, will this mean that he will have to stay in prison the whole time?"

The trial judge answered: "Not necessarily. It would depend upon the good behavior of the defendant and the attitude of the Parole Board under the indeterminate sentence law, but that is something with which you have nothing to do."

After further deliberation of less than five minutes, the jury returned with a verdict of electrocution.

The defendant relies upon an assignment of error complaining of this action by the trial judge and upon our own case of *Porter* v. *State,* 177 Tenn. 515, 523, 151 S. W. (2d) 171, 174. In this cited case, the jury came in and asked the following question:

" 'Judge, some question came up as to whether or not, if these defendants were sentenced to life imprisonment, or 99 years, could they be pardoned in say ten or fifteen years?

" 'Judge JOHNSON: The only instructions to govern your actions as jurors are embodied in the written charge which is in your possession.'

"We consider this a proper response to the inquiry. It was the province of the jury to pass upon the guilt or

innocence of the defendants and, if found guilty, to decide what punishment their crime merited. The power to grant pardons is vested exclusively in the Governor, and the jury should not engage in speculations as to what he may or may not do with respect to those incarcerated in the penitentiary. If the court had responded to this inquiry of the jury by stating that the Governor had the power to pardon at any time he saw proper to do so, or the court had stated to the jury that the Commissioner of Institutions has the authority to parole a life prisoner after serving twenty-five years, less time for good behavior, and the jury had thereupon fixed the punishment at death, the defendants would have had good ground for insisting that but for this instruction the jury would likely have imposed only a penitentiary sentence. It is inferable from this inquiry that the jury was considering a life term in the penitentiary only on condition that the defendants could not be pardoned; hence, had the court advised them that they could be pardoned at any time after conviction, the jury most likely would have imposed a death sentence. In this view of the case it cannot be said that the refusal of the court to answer the inquiry was prejudicial to the defendants."

While it may be said that the above quotations from the Porter case are dicta, yet these expressions appeal to reason. Evidently the jury in the instant case would have sentenced the defendant to some term in the penitentiary had they believed that he would have to serve the full term of the sentence.

In this connection, see also *People* v. *Smith,* 206 Cal. 235; 273 P. 789; *Bird* v. *State,* 154 Ark. 297, 242 S. W. 71.

■■ We think it is error whenever the trial judge undertakes to enter into a discussion with the jury as to

what is the effect of certain punishment. The trial judge should have followed the course pursued by Judge JOHNSON in the Porter case by simply stating that the instructions given them fully covered the case.

It results that for this error, the judgment of the lower court must be reversed and the case remanded for a new trial.

All concur.