STATE *ex rel.* BRINKLEY *v.* WRIGHT.

(*Nashville,* December Term, 1950.)

Opinion filed July 27, 1951.

On Petition to Rehear August 31, 1951.

MARY GUIDI, of Memphis, for plaintiff in error.

NAT TIPTON, Assistant Attorney General, for the State.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This is a habeas corpus proceedings. Its purpose is to obtain a judgment ordering the discharge of Walter Ridley from the penitentiary where he is being held by virtue of a judgment of the Criminal Court of Shelby County sentencing him to the penitentiary for a period of not more than ten years as punishment for his conviction by a jury of murder in the second degree. The basis upon which it is sought to justify the petition is that the judgment and sentence is a nullity for each of the two reasons hereafter stated.

The Circuit Judge entered of record a judgment denying the petition on the ground that it failed to show that Walter Ridley is being illegally restrained. This judgment allowed the relator an appeal to this Court where the questions involved have been thoroughly presented both by brief and oral arguments.

The judgment in the criminal case recites that when Walter Ridley was arraigned, and while represented by counsel, he pleaded guilty to an indictment charging murder in the first degree, and that thereupon a jury being sworn "a true verdict (to) render according to the law and evidence, upon their oath do say the defend-

ant is guilty of murder in the second degree as charged and fix his punishment at imprisonment for not more than ten years in the State Penitentiary'', and that the Court then sentenced Ridley to the penitentiary ''for a period of not more than ten years''.

The punishment for murder in the second degree is confinement in the penitentiary for not less than ten nor more than twenty years, Code Section 10773. It, therefore, comes within the indeterminate sentence law providing that the jury shall fix the maximum term, Code Section 11766.

Under the indeterminate sentence law the minimum term fixed by law becomes, in effect, a part of the judgment whether the judgment so recites or not, Code Section 11770. It follows that the judgment, in legal effect, sentenced Ridley to confinement in the penitentiary for not less than ten years nor more than ten years.

The language of Code Section 10770 is that ''The jury before whom the offender is tried, shall ascertain in their verdict whether it is murder in the first or second degree; and if the accused confess his guilt, the court shall proceed to determine the degree of crime by the verdict of a jury, upon the examination of testimony, and give sentence accordingly.''

As before stated, Ridley pleaded guilty to an indictment charging murder in the first degree. Based upon his plea, it is the insistence of the relator that by virtue of the last clause in the above quoted Code Section 10770 the authority of the jury is limited to fixing the number of years of punishment which a defendant shall receive for the unlawful homicide, and that only the Court has authority to determine the degree of the unlawful homicide, and that the Court must find that degree of the

crime, the statutory punishment for which comes within the number of years of punishment which the jury fixed in its verdict.

Based upon the above stated insistence, the relator concludes that the judgment in this case is void because the jury, rather than the Court, found the degree of unlawful homicide of which the defendant, Ridley, was guilty.

If the relator's insistence is correct, then Section 10770 puts "the cart before the horse" in that, as to persons pleading guilty to an unlawful homicide, the degree of the crime committed would be determined, or at least much influenced, by the amount of punishment which the jury felt that particular defendant should have, rather than the otherwise required procedure of first ascertaining the degree of the crime and then fixing the punishment within the limits provided by law for that particular degree of unlawful homicide. This Court is not able to find within the statute anything which evidences an intention upon the part of the Legislature to bring about such a drastic change. It is of the opinion that the reasonable construction to be given this code section, read as a whole, or of the clause in question, read separately, is that where a defendant pleads guilty to an indictment charging murder the jury by its verdict must determine the degree of unlawful homicide of which he is guilty, and that the natural meaning of each word of the clause in question and the punctuation, or lack thereof, likewise require such construction.

Moreover relator's construction of the last clause of Code Section 10770, enacted in 1829, is in conflict with Code Section 11766, enacted in 1913, wherein it is provided that in crimes to which the indeterminate sentence

law applies the jury in its verdict shall say:—" 'We find the defendant guilty as charged in the indictment,' or 'We find the defendant guilty of ——' ''.

It is next insisted that the verdict is void because after finding Ridley guilty of murder in the second degree, the jury, in fixing the punishment at "not more than ten years" did thereby fix a punishment which was applicable only to voluntary manslaughter. The statute fixes the punishment for voluntary manslaughter at not less than two nor more than ten years. It fixes the punishment for second degree murder at not less than ten nor more than twenty years.

Inasmuch as the minimum punishment fixed for murder in the second degree is ten years and since the jury fixed the maximum term of Ridley in this case at not more than ten years after finding him guilty of murder in the second degree, it follows that the gist of the immediately above stated insistence of relator is that it is illegal for the jury to fix as the maximum term the same number of years which the law fixes as the minimum term for the offense committed. There is quite high authority which supports this position. It was held that such a sentence is illegal in the Alabama case of *Sanders* v. *State*, 19 Ala. App. 367, 97 So. 294, and in the Montana case of *Ex parte Collins*, 51 Mont. 215, 152 P. 40, which cases are revealed to us by 24 Corpus Juris Secundum, Criminal Law, Sec. 1582, page 111.

██ Notwithstanding our very high regard for the opinion of the Courts of last resort of our two sister States just mentioned, this Court is compelled to disagree, as a matter of reasoning, with the conclusion of these two eminent courts. We can think of no logical reason why a jury, in the absence of statutory prohibi-

tion, may not fix the maximum term for which a defendant shall be sentenced at the same number of years fixed by law as the minimum term for that offense. Moreover, this Court seems heretofore to have so construed our indeterminate sentence statute, although the question here made was not expressly made in the two cases to which reference will now be made.

In *Hensley* v. *State*, 166 Tenn. 551, 553, 64 S. W. (2d) 13, 14, defendant was convicted of voluntary manslaughter and the jury fixed his punishment at "not less than one year, nor more than two years" in the penitentiary. The minimum punishment for voluntary manslaughter is two years, Code Section 10775. This Court rejected the insistence that the judgment on this verdict was invalid, but corrected the judgment "so as to fix the punishment, *both maximum and minimum*, at two years in the penitentiary." (Emphasis supplied.) The same construction was put upon our indeterminate sentence statute in *Landers* v. *State*, 157 Tenn. 648, 651, 11 S. W. (2d) 868.

The judgment will be affirmed with costs of this Court adjudged against the relator, Minnie Brinkley, and the surety on her bond, and the costs of the lower Court adjudged against Minnie Brinkley.

## ON PETITION TO REHEAR.

This pleading, though styled a "petition to rehear", states in its opening sentence that it is "not a petition to rehear, but a request, respectfully made upon the Court, to clarify a point of procedure". It is explained that the request is made with the thought that it will "save other counsel anxiety and sleepless nights".

It was the opinion of the Circuit Judge to whom the petition for habeas corpus was presented that the petition

failed to state on its face grounds that justified the issuance of the writ, and entered of record a judgment to that effect, on the theory, no doubt, that such procedure might enable relator to appeal, as prayed by her.

The attorney for the relator on such appeal presented to this Court her insistences that the petition for habeas corpus, assuming its allegations to be true, did show on its face that Ridley is being illegally restrained of his liberty.

The appeal was entertained by this Court over the mild objection of the State and, in its opinion heretofore announced, this Court endeavored to state the reasons for this Court's opinion that the insistences made by her through her attorney on this appeal were insistences that were not well taken.

The request made in the "petition to rehear" is this: "* * * will the Court, if it please, so clarify the point, that within the right to appeal from 'any judgment' in our statute on Habeas Corpus is embraced right of appeal from action or judgment of the lower court denying the writ to issue initially?"

In short, it is said in substance by the petition to rehear that "You, the Court, entertained the appeal as requested by me. Now I want you to say whether the law justified you in entertaining the appeal which I requested."

That which was done by this Court, and doubtless by the Circuit Judge, was in the spirit of indulgence to relator and her attorney without considering its legal justification, because this was the course most favorable to the one whose liberties were involved, and since only questions of law were presented. Accordingly, we pretermitted the question made by the Attorney General as to whether there was any right of appeal in this

matter, and considered the case on its merits, as requested by relator and her attorney.

Insofar as this case is concerned, the result reached in considering the appeal upon its merits, as requested by relator, is the same as the result which would have been reached if the Court, after considering the question pretermitted, had refused to entertain the appeal. It follows that any consideration now of the pretermitted question would amount to no more than an academic discussion of an abstract question.

The petition is denied.

All concur.