No. 38,425

State of Kansas, *Appellee,* v. James Lammers, *Appellant.*

(237 P. 2d 410)

Opinion filed November 10, 1951.

*A. O. Delaney, Jr.,* of Troy, argued for the appellant.

*Robert A. Reeder,* county attorney, argued the cause and *Robert Guier,* of Troy, *Harold R. Fatzer,* attorney general and *Willis H. McQueary,* assistant attorney general, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Smith, J.: The defendant was convicted of murder in the first degree in two counts. The jury fixed the punishment at death. He appeals.

The defendant does not bring any of the facts with reference to the commission of the offense here. He only attacks some proceedings that occurred during the trial. The facts as to those are briefly as follows:

During the presentation of the defendant's evidence his brother testified that defendant had been a dull student in school; had

never improved very much; only reached the fifth or sixth grade; he wrote very little and was slow in his reading; that in his opinion the defendant had the mentality of an eight or nine or ten year old child. He also testified that in his opinion the defendant did not understand to the full extent the desperateness of his situation.

An uncle of defendant testified to about the same effect.

Also another acquaintance.

The sheriff of Atchison county, Kansas, where the defendant had been incarcerated after his arrest, testified to about the same effect.

A Catholic priest testified that he was experienced in educational work and had visited with defendant in jail and in his opinion the mentality of defendant was that of a nine-year-old child.

At this point the county attorney filed a motion in which he called attention to testimony that had been given to the effect that the defendant was unable to comprehend his position and to make his defense. He moved that the court appoint a commission or another jury for the purpose of determining the question of whether defendant was insane, an idiot or an imbecile and unable to comprehend his position and to make his defense, all in accordance with G. S. 1949, 62-1531.

The court proceeded to appoint a commission of three practicing physicians in Doniphan county. The court instructed that commission as follows:

"You are now officers of the court. You have been appointed by the court to examine James Lammers in the above entitled case, under Section 62-1531, Revised Statutes of Kansas, 1949, to ascertain, after a thorough examination of the said James Lammers, whether he be insane, an idiot or an imbecile and unable to comprehend his position and make his defense. A person may be illiterate, have a low degree of competency and a low I. Q. rating as relates to scholastic matters but he may have a normal or high degree of competency through native or natural ability. You will not be justified in finding that the defendant James Lammers is unable to comprehend his position and make his defense unless you also find he is insane, an idiot or an imbecile."

After the hearing the commission made the following report:

"We, the Commission, heretofore appointed and sworn to examine the defendant James Lammers, after careful examination of the said James Lammers, on our oaths, state and find that the said James Lammers is not insane, an idiot or an imbecile and that he is able to comprehend his position and to make his defense."

Upon the return of that report the trial proceeded with the result that the defendant was found guilty on both counts and the jury fixed his penalty at death by hanging as to each count.

Upon the above verdict being returned counsel for the defendant announced that he was ready to have the prisoner sentenced. Thereupon the court inquired of the defendant and his counsel if the prisoner had any reason to give why sentence should not be pronounced. The defendant said he did not understand. The court repeated the question and he still said he did not understand, whereupon the court made a finding; that the defendant stood mute. The court then found the defendant was without legal reason why sentence should not be pronounced, and pronounced sentence that defendant shoud be punished by death by hanging on the 18th day of May, 1951, between the hours of six a. m. and twelve noon.

At the time of the appointment of the commission and after the oath had been administered to the members the following colloquy occurred:

"Mr. Reeder: On behalf of the State I would request that the doctors be permitted to engage in their examination of the defendant in the presence of counsel, either for the State or the defense.

"The Court: That is all right with you, Mr. Delaney?

"Mr. Delaney: Oh, I assume it is.

"Mr. Guier: Will the doctors be permitted to make any other examinations other than the mental examination?

"The Court: That, of course, is up to the doctors. If, during their examinations, they are of the opinion his mental condition shows any relationship to his physical condition, they may inquire into the cause of that mental condition in his physical condition. It is hard to separate the two, so if it becomes necessary to do so, you may examine him physically. I take it then you want everyone here present to withdraw from the doctors and the defendant. The officers will have to remain.

"Mr. Guier: They may remain, possibly, out of range.

"Mr. Delaney: If counsel withdraw, everybody withdraws except the officers of the Court?

"Mr. Reeder: The officers, I think, can stand at the door.

"Mr. Delaney: The bailiff, court reporter and everybody withdraws, is that right?

"The Court: That is right. Everybody retire."

While the jury was deliberating it was returned to the courtroom and the following colloquy occurred:

"The Foreman: We have a question whether or not he would have a chance of a parole for killing his wife.

"Thereupon, the Court answered:

"The Court: That is a matter which is entirely up to the clemency of the Governor and the Pardon Board and the Board of Administration. As a direct answer to your question, this court will have to say that they do have that power and I think it is only fair to add that that is a matter that is in the

wise discretion of the Governor, the Pardon Board and the Board of Administration. Does that answer your question, sir?

"The Foreman: Yes, sir."

The trial court in this case saw fit to have the investigation made by a commission. In this the court acted correctly. (See *State v. Badders*, 141 Kan. 683, 42 P. 2d 943.)

The defendant argues first the court erred because the doctors who were appointed on the commission to examine the mental condition of the defendant were doctors of the ordinary practice of medicine and no trained psychiatrist was appointed on the commission and also that the court erred in denying him the right to have his attorney before the commission with him, and in failing to appoint a guardian *ad litem* to represent him before the commission.

G. S. 1949, 62-1531, provides as follows:

"Whenever any person under indictment or information, and before or during the trial thereon, and before verdict is rendered, shall be found by the court in which such indictment or information is filed, or by a commission or another jury empaneled for the purpose of trying such question, to be insane, an idiot or an imbecile and unable to comprehend his position, and to make his defense, the court shall forthwith commit him to the state hospital for the dangerous insane for safekeeping and treatment; and such person shall be received and cared for at the said institution until he shall recover, when he shall be returned to the court from which he was received to be placed on trial upon said indictment or information. If in the judgment of the medical superintendent of the state hospital for the dangerous insane, any person committed under this section is not in such condition as warrants his return to the court but is in a condition to be paroled under supervision, the superintendent shall report to the department and the committing court his reasons for his judgment and the plans which have been made for such parole. If the court does not file objection to the parole within sixty days of the date of the report, the superintendent may, with the approval of the department, parole him to a legal guardian or other person, subject to the rules and regulations of the department. (L. 1911, ch. 299, § 4; R. S. 1923, § 62-1531; L. 1949, ch. 323, § 3; June 30.)"

The above statute, G. S. 1949, 62-1531, contemplates the determination of the defendant's mental condition by the court where trial is being held, a commission or another jury empaneled for the purpose of trying such question.

The defendant argues here that the trial court erred in not having at least one trained psychiatrist on it rather than having the commission composed of three regular practicing doctors. This argument might be disposed of by pointing out that defendant and his counsel stood by while this commission was being appointed

and made no objection to the manner in which it was selected nor its personnel nor to the qualification of its members. Neither defendant nor his counsel made any request that any person of any particular qualification be on the commission. Under such circumstances it might be held that the defendant had waived his right to raise the point. This is a case where capital punishment has been assessed, however, and on that account we have concluded to examine the question with meticulous care.

At the outset, it may be remarked G. S. 1949, 62-1531, does not provide in what manner a commission shall be selected or another jury empaneled. The question of how to handle cases of persons charged with crime when it appears they are for some reason unable to conduct their defense has received the attention of our legislature from time to time. We will examine our statutes past and present.

*In re Wright,* 74 Kan. 409, 89 Pac. 678, was a case where it was made to appear that a person charged with felony was insane. Before his preliminary hearing was had he was taken before the probate court where a verdict and judgment was reached that he was insane. This was called to the attention of the examining magistrate and it was contended that the examining magistrate had lost jurisdiction on account of the verdict and judgment of the probate court. The magistrate overruled the plea in abatement and proceeded to bind the defendant over. This action was attacked in a petition for a writ of habeas corpus. We denied the writ. We said, however, in the absence of any statute on the subject:

"It is the law of this country, independent of any statute, that a defendant shall not be compelled to answer to, or defend against, a criminal charge if mentally or physically unable at the time to do so in a rational manner, when such disability has developed after the alleged commission of such crime; but, in the absence of a statute to the contrary, the duty of determining whether or not such disability exists rests with the court whose duty it is to hear such answer or defense."

At the time this case was decided Laws 1901, ch. 353 provided for a trial of a sanity case by a jury of four, one of whom should be a doctor in good standing. This opinion was handed down at the July term in 1906. The legislature of 1911 enacted chapter 299. It first provided for a state asylum for the dangerous insane on the grounds of the state penitentiary. Its sections 4 and 5 provided as follows:

"SEC. 4. Whenever any person under indictment or information, and before or during the trial thereon, and before verdict is rendered, shall be found by the court in which such indictment or information is filed, or by a commission or another jury empaneled for the purpose of trying such question, to be insane, an idiot or an imbecile and unable to comprehend his position, and to make his defense, the court shall forthwith commit him to the State Asylum for the Dangerous Insane for safe keeping and treatment; and such person shall be received and cared for at the said institution until he shall recover, when he shall be returned to the court from which he was received to be placed on trial upon said indictment or information.

"SEC. 5. Whenever during the trial of any person on an indictment, or information, and evidence is introduced to prove that he was insane, an idiot or imbecile or of unsound mind at the time of the commission of the offense and such person shall be found to have been at the date of the offense alleged in said indictment or information, insane, an idiot, or an imbecile, and is acquitted on that ground, the jury or the court, as the case may be, shall so state in the verdict and in said case it shall be the duty of the jury to pass specially on the question of the sanity of the defendant, and the court shall thereupon, forthwith commit such person to the State Asylum for the Dangerous Insane for safe keeping and treatment, and such person shall be received and cared for at said institution. No such person so acquitted shall be liberated therefrom, except upon the order of the court committing him thereto and until the superintendent of the said Asylum for the Dangerous Insane shall certify in writing to such committing court that in his opinion such person is wholly recovered and that no person will be in danger by his discharge."

It will be noted these are the forerunners of G. S. 1949, 62-1531, and 62-1532. One applied to a case where the mental condition of the defendant at the time of trial was the question to be determined, and the other his mental condition at the time the offense for which he was being tried was committed. In either event in case the defendant was found to be insane, an idiot or an imbecile he was to be committed to the asylum for the dangerous insane. Section 4, which as amended is G. S. 1949, 62-1531, provided for a determination of the question by the court, a commission or another jury empaneled for the purpose of trying such question. This is the first time such a provision appears in our statute books and there is no provision for the manner in which the commission shall be selected nor the qualification of its members. Neither is there any such provision for the jury.

At that time chapter 353, sections 54 and 55, Session Laws of 1901, later appearing as R. S. 1923, 76-1207 and 76-1208, were in effect. R. S. 1923, 76-1207, provided that lunacy inquests should be by a jury or commission at the discretion of the probate court. R. S. 1923, 72-1208, provided when no jury was demanded the

probate court could appoint a commission of two qualified physicians to make a personal examination. The Session Laws of 1919 dealt with the question of procedure as to feeble-minded and insane people. (See Session Laws of 1919, ch. 299.) Later R. S. 1923, 39-236, 39-237 and 39-238 was enacted. It referred to chapter 70 of the General Statutes of 1915 and to chapter 165 of the Session Laws of 1917. These two chapters provided procedure relative to insane people, idiots and imbeciles. The first section provided that where no jury was demanded the court could appoint a commission of two qualified physicians or one qualified physician and a clinical psychologist who should make a personal examination of the person whose mental condition was being inquired into.

Sections 2 and 3 of the chapter provided as follows:

"That whenever in a court of record, during the hearing of any person charged with a misdemeanor or crime, it shall be made to appear to the court that the person is feeble-minded, the court shall summarily remand such person to the probate court of the county for examination under the provisions of this act. (L. 1919, ch. 299, § 2; June 17.) (39-237.)

"That whenever any person is found and adjudged to be feeble-minded in accordance with the provisions of this act, it shall be the further duty of the court to investigate and determine whether it is necessary to commit such person to the state training school, and if the court shall find, either at the time of trial or at any time thereafter, that the continued presence of such person in the community is a menace to himself or others or that the welfare of such person would be promoted thereby the court shall order such person committed to the state training school for detention and care. (L. 1919, ch. 299, § 3; L. 1920, ch. 66, § 1; Feb. 6.)" (39-238.)

It must be remembered what is now G. S. 1949, 62-1531 and G. S. 1949, 62-1532 were in effect when the above statutes were enacted and remained in effect after they were repealed in 1939 by the enactment of the probate code. It should be noted that R. S. 1923, 39-236 provided for a commission of two doctors but it was within the discretion of the probate court whether one should be a clinical psychologist.

With the statutes as above, the case of *The State v. Ossweiler*, 111 Kan. 358, 207 Pac. 832, was decided. There the defendant had been convicted of murder in the second degree. We pointed out evidence in the record indicating defendant was insane at the time of his trial. We pointed out section 4 of chapter 299 of the Laws of 1911, now G. S. 1949, 62-1531, also section 2 of chapter 299 of the Laws of 1919 and remarked that the effect of the statutes of 1919 was to take feeble-mindedness out of the statutes of 1911. We said:

"Should the court find the defendant to be suffering from mental defect other than feeble-mindedness, he should be committed to the hospital for dangerous insane; should he be suffering from feeble-mindedness, he should be remanded to the probate court."

Also

"Trial on the merits is, of course, no substitute for the preliminary investigation. The question of capacity to commit crime on August 1 bears no relation to the question of capacity on December 15 following to defend against a charge of crime."

This opinion simply held the inquiry should be made. It pointed out no procedure.

*State v. Brotherton,* 131 Kan. 295, 291 Pac. 954, sheds some light on our problem. There the defendant was convicted of murder. During her trial some evidence was introduced tending to show she was feeble-minded at the time of the trial. The trial court suspended the trial and summarily remanded her to the probate court for determination of her mental condition. This was the procedure provided for by section 2 of chapter 299 of the Laws of 1919. The probate court first announced five days notice to her would be necessary, then proceeded to have her examined before a commission of two physicians and she was found not to be feeble-minded to the extent that she was unable to comprehend her position. Following this she appealed to the district court. When the district court before whom the prosecution was pending was advised of this appeal he proceeded to hear and determine her mental condition and found her not to be feeble-minded and proceeded with the trial with the result she was convicted. The main question urged on the appeal was that the trial court erred in going ahead with the trial of defendant's appeal from the probate to the district court pending. Even though the remanding of defendant to probate court was made pursuant to section 2, chapter 199, Laws of 1919, we discussed both that section and G. S. 1949, 62-1531. On the question of whether she had the right to appeal from the judgment of the probate court we said:

"Did the defendant have a right of appeal from the judgment of the probate court finding her not to be feeble-minded? The issue for determination in the examination conducted before the probate court was whether she was or was not feeble-minded. So far as the proceeding before the probate court was concerned it was not trying the issue in the criminal case."

We further said:

"A proper administration of justice makes no such procedure necessary or advisable. Can it be said that defendant was 'aggrieved' by the result of the

proceeding in the probate court? The hearing there terminated with a decision in favor of her mentality. She could not have been aggrieved thereby so far as the decision of the probate court is concerned. The fact that she might be prejudiced by being obliged to defend herself in the criminal proceeding does not furnish a sufficient basis for a showing that she was aggrieved by the decision of the probate court. Furthermore, R. S. 39-237 provides 'whenever . . . during the hearing . . .' The legislature intended to prevent any miscarriage of justice by providing for such an emergency as arose in this case. It had in contemplation the interruption of the trial to determine whether or not the defendant 'is feeble-minded.' It did not see fit to provide expressly for an appeal. What it had in mind, no doubt, was just what was done in the case at bar, namely, that when the attention of the trial court is challenged to the situation, the trial should stop and the defendant be promptly remanded for determination of the question of mentality.

"It follows logically that if the probate court finds a person is feeble-minded, jurisdiction of the person is retained for the purpose of making disposition of the feeble-minded person as contemplated in R. S. 39-238. It likewise follows that if the probate court determines the person is not feeble-minded then the decision should not act as a discharge of the accused, but the judgment of the probate court should be reported back to the district court, and trial of the criminal case should then proceed. We conclude, therefor, that the defendant was not aggrieved by the decision of the probate court in her favor and was not entitled to take an appeal from the decision. The district court did not err in failing to proceed to try out the appeal from the probate court."

This is of interest to us here because it puts an inquiry such as we have here in a class by itself and holds that a defendant whose mental condition is the subject of investigation is not entitled to any rights and immunities not provided for in the statute pursuant to which the inquiry is being conducted.

The court also considered whether a five days notice of the hearing was required. We pointed out that chapter 299 of the Laws of 1919 did not provide for any notice and the procedure was summary—hence the defendant was not entitled to any notice even though the other statutes providing for the determination of a person's mental condition did provide for five days notice.

This brings us up to the present. Chapter 299 of the Laws of 1919 has been repealed. (See chapter 180, section 280, Laws of 1939.)

Section 62-1531, G. S. 1949, is still in effect just as enacted in 1911 except the procedure to be followed if the defendant should be found to be insane, an idiot or an imbecile and unable to comprehend his position and to make his defense has been changed somewhat. We are not concerned with that here.

As to the method of conducting a hearing where one is suspected of being insane, that is covered by G. S. 1949, 59-2257 to 59-2270. G. S. 1949, 59-2264 provides as follows:

"Unless a jury shall have been demanded, the court shall appoint a commission of two duly licensed doctors of medicine to assist at the hearing. The commissioners and the court shall make and file a report of their findings. In case the hearing is for the commitment of an insane person, the report shall be in duplicate and on such forms as may be prescribed by the state department of social welfare, one of which shall be filed with the court and the other shall be transmitted to the department of social welfare."

The above statute does not provide for any psychiatrist or other specially trained person being on the commission. Thus we see it has been the settled policy of this court and our legislature to treat the inquiry into the mental competency of a defendant as a distinct thing from his trial for the crime charged. We have also held the proceedings were summary and he was not entitled to any safeguards or rights not provided for in the statutes including notice. The statutes have never required that any member of the commission be anything more than a doctor of medicine. The provision in G. S. 1949, 62-1531, that the inquiry may be made by a commission does not require that the members of the commission should have any qualification other than that of a qualified doctor, nor is there any constitutional provision for such.

Defendant relies on what this court said in *In re Timm*, 129 Kan. 126, 281 Pac. 863. That opinion is not in point here. The court was there considering a statute which provided in cases where a defendant had been acquitted by a jury on the ground he was insane at the time he was alleged to have committed the offense, he should be committed to the ward for the criminally insane and that no such person should be liberated except in pursuance of an order made by the board of administration after a full hearing and a finding and determination by the board that the defendant was fully recovered and restored to his right mind and that no person would be endangered by his discharge. The petitioner had been acquitted on the ground of being insane at the time he was alleged to have committed the offense. He later sought to be released after a hearing pursuant to the above statute. The board found him to be recovered but the warden refused to release him on the ground the statute was unconstitutional. We discussed the various amendments to similar statutes. Among other things we said:

"It is further urged that the revised section is invalid because it does not pro-

vide for a notice to be given to all interested parties. It does require the board to give 'a full hearing,' which would be the one affording a reasonable opportunity to all interested parties to appear and be heard."

Defendant next argues that the trial court erred in a certain oral instruction it gave the jury. That came about this way. After the jury had been deliberating the jury then returned to the courtroom and asked the court the following:

"We have a question whether or not he would have a chance of a parole for killing his wife."

Whereupon the court said:

"That is a matter which is entirely up to the clemency of the Governor and the Pardon Board and the Board of Administration. As a direct answer to your question, this court will have to say that they do have that power and I think it is only fair to add that that is a matter that is in the wise discretion of the Governor, the Pardon Board and the Board of Administration. Does that answer your question, sir?"

Whereupon the foreman answered, "Yes, sir."

Defendant simply makes the statement that this statement was erroneous and prejudicial. Presumably the basis of that argument is that the instruction given was not in writing as required by statute. That point is not good. (See *State v. Howland,* 157 Kan. 11, 138 P. 2d 424.)

Defendant makes a point of the fact that the answer of the court did not correctly state the law. As a matter of fact we cannot see very much wrong with the answer.

The judgment of the trial court is affirmed.