PAUL KEITH, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

403 S.W.2d 758.

(*Nashville,* December Term, 1965.)

Opinion filed April 22, 1966.

Petition to Rehear Denied June 8, 1966.

LANCE B. BRACY and W. P. BRYANT, JR., Springfield, for plaintiff in error.

GEORGE F. MCCANLESS, Attorney General, and ROBERT F. HEDGEPATH, Assistant Attorney General, and JAMES M. POTTER, District Attorney General, Springfield, prosecuted the case in the trial court, for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the Court.

Paul Keith was indicted March 26, 1964, for the first degree murder, on January 11, 1964, of James Osborne. On the first trial of the case, on June 23, 1964, the jury was unable to agree and the court declared a mistrial. The case was tried again on April 6, 1965, and the jury found the defendant guilty of murder in the second degree, and fixed his punishment at ten years imprisonment. Upon his motion for a new trial being overruled, the defendant was granted an appeal to this Court, which has been seasonably perfected.

The facts are generally undisputed, with the exception of what occurred immediately before and after the fatal blow was struck. The defendant and the deceased were brothers-in-law, the deceased having married the defendant's sister. On the night of the killing, the defendant Keith, a man named Howell Pope, a Mr. and Mrs. La-Maye, neighbors, and their children, were visiting in the Osborne home in Robertson County. According to the evidence there was some heavy drinking of both whiskey and beer. Everyone seemed to be in good spirits. The defendant and the deceased and the LaMayes were playing a card game called ''Rummy'' when the defendant and the deceased got into an argument over the rules and started fighting and then scuffling on the floor. They were separated and the defendant was ordered to leave the house.

Mr. Pope testified that when the defendant was ordered from the home he, Mr. Pope, left with him, suggesting that he would take him home. Pope further testified that he and the defendant went outside and got into his truck, whereupon the defendant said, ''Wait a minute.'' The defendant then went back to the home and shortly thereafter Mr. Pope heard screams coming from the house. Edmond LaMaye testified that after the defendant went out the door, he and his wife discussed the possibility of their leaving with the deceased. He said that the deceased and his wife convinced them that they should not leave but stay a little while longer.

A short time after the defendant left the house, the deceased went into the back part of the house, picked up an ax and hurriedly went to his front door. After opening the front door and taking one step out onto the front porch, the defendant hit deceased in the head with a piece

of stove wood, from a pile of wood stacked beside the front door, and knocked him back into the living room. Deceased died one week later from the blow.

Defendant's theory of the case is essentially that of self-defense. His testimony is that upon being ordered to leave the house he stepped out onto the front porch, wiped his nose which was bleeding, apparently because of the fight inside, and reached into his pocket for a cigarette. He stated that before lighting the cigarette he heard a noise, looked around and saw the deceased coming at him with the ax drawn in a threatening position, whereupon he reached for a piece of the stove wood and with one motion struck the deceased. The defendant denied the witness Pope's testimony that defendant had gotten into Pope's pickup truck to leave, but then had gotten out and gone back to the house.

The only other person who saw the defendant after he left the house that night was the eleven-year old son of the deceased. This boy, Ray Osborne, testified that he was outside and saw the defendant swinging a piece of stove wood on the porch of the home, before deceased stepped out onto the porch. The boy did not, however, see the fatal blow.

■■ The first five assignments of error all involve the question of whether the evidence preponderated against the verdict of the jury, particularly with regard to the question of self-defense. First of all, we think there is conclusive evidence, even from the defendant's own testimony, to show that the crime of murder in the second degree was committed. The jury could have found conclusively that the defendant struck and killed the deceased with malice aforethought.

It is * * * well-settled in this State that the verdict of the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflict in favor of the theory of the State. Such verdict also removes the presumption of innocence of the accused and raises a presumption of his guilt and puts upon him, here, the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173 (1963), and numerous cases cited therein.

■ The only evidence in defendant's favor was that he committed the crime of self-defense and, therefore, should be excused. It must be remembered, however, that for the defense of self-defense to be well pleaded and made out, the defendant must convince the jury that the deceased's actions engendered in the defendant a genuine and well-founded fear of great bodily harm. *Nance v. State,* 210 Tenn. 328, 358 S.W.2d 327 (1962); *Cathey v. State,* 191 Tenn. 617, 235 S.W.2d 601 (1951).

While there is no conflict in the evidence that deceased presented a formidable threat in coming out onto the porch with an ax, there is conflicting testimony as to whether defendant was put in fear of his life by this threat. On the contrary, there is considerable evidence that defendant was not attempting to avoid deceased, but either was waiting for him out on the porch or voluntarily went back to the house to encounter deceased after starting to leave.

■ The fact that he may have been waiting for deceased is supported by the evidence that he already had the stove wood in his hand and was swinging it, and that

deceased was struck immediately after he crossed the threshold. It is difficult to believe, and apparently the jury did not believe, that as deceased was wielding the ax in a threating position, defendant reached for the stove wood, picked up a piece, and hit deceased across the head, all in the time that it took deceased to take one step outside the door. The jury resolved this conflict in favor of the State, and we think they were supported by strong evidence in rejecting defendant's theory.

It is also asserted by plaintiff in error that the verdict of the jury was harsh and evidenced passion and prejudice. As we have stated before, the evidence clearly warranted a conviction of second degree murder. The minimum sentence for second degree murder is ten years. The sentence seemed to show leniency as opposed to harshness, so we reject this assignment of error.

The remaining assignments of error deal with a discussion between the trial judge and the jury after the formal written charge was submitted and the jury had retired. After deliberating for some time the jury returned to the courtroom with a question:

FOREMAN: Your Honor, we need a little information. If we find the defendant guilty to one of the charges, I won't say which charge, are we allowed to set the sentence flat. Where he won't be eligible for parole until that certain length of time.

THE COURT: No, sir. The legislature in Tennessee gave us an indeterminate sentence law and you and I have no control over that.

FOREMAN: Well, that's what we were in a dispute about. We weren't sure about that.

It is insisted that reversible error was here committed in that (1) the judge and jury improperly discussed the question of parole for the defendant, and (2) this discussion was in the nature of supplemental instructions which are required to be in writing.

On the question of the impropriety of the judge and the jury discussing the matter of parole or pardon, the leading case in this State is *Williams v. State,* 191 Tenn. 456, 234 S.W.2d 993 (1950). There the jury returned a verdict of death by electrocution on a first degree murder charge. After the court had fully charged the jury and it had deliberated approximately an hour and a half, the jurors returned to the courtroom and asked:

If we give this man a sentence for a term of years, will this mean that he will have to stay in prison the whole time?

The trial judge answered:

Not necessarily. It would depend upon the good behavior of the defendant and the attitude of the parole board under the indeterminate sentence law, but that is something with which you have nothing to do.

This Court reversed and remanded for a new trial, noting:

The jury in the instant case would have sentenced the defendant to some term in the penitentiary had they believed that he would have to serve the full term of the sentence.

It is apparent that the harshness of the sentence assessed by the jury, which might have been life imprisonment instead of death had they not been apprised of the possi-

bility of parole, was a determinative factor calling for a reversal in this particular case.

Two other cases in which capital punishment was meted out approved what should have been the proper response of the trial judge upon a question from the jury about parole. In *Porter v. State,* 177 Tenn. 515, 523, 151 S.W.2d 171 (1941), and *Hale v. State,* 198 Tenn. 461, 478, 281 S.W.2d 51 (1955), the trial judge responded simply with the admonition that the only instructions to govern your actions as jurors are embodied in the written charge which is in your possession.

In *Graham v. State,* 202 Tenn. 423, 304 S.W.2d 622 (1957), it was held improper for the State's Attorney to argue from the Code about the powers of the Board of Pardons and Parole, the reason being, of course, that it is improper for the jury to consider parole when fixing a defendant's punishment. Although the sentence fixed by the jury in this case was twenty years and not death, prejudice to the defendant was clearly present, because the State's Attorney was allowed to argue exactly the number of years the defendant would have to serve before he would be eligible for parole if a life sentence were given him. While this case stresses the fact that the jury should not be concerned in any way with the probability or possibility of parole, we think it is clearly distinguishable from the case at bar because there the jury was allowed to hear particular provisions of the parole law.

While the law of this State is clearly to the contrary, we note that there is an annotation in 35 A.L.R.2d 69 (1954) which indicates that there are at least some cases in other states where correct information given in

response to a jury's questions regarding parole does not result in prejudicial error—even where the death sentence was imposed. On the other hand, there are some cases in which even a mention of any board or body with pardoning or parole powers has been ruled reversible error. *Taylor v. State,* 42 Ala.App. 617, 174 So.2d 335 (1965). It has even been held that where the trial judge properly answered "I cannot answer that question," when asked about parole on life imprisonment, he nevertheless should have told the jury to dismiss such considerations from their mind, and on his failure to do so, a defendant sentenced to death was given a new trial. *State v. Conner,* 241 N.C. 468, 85 S.E.2d 584 (1955).

In a recent Virgina case, *Wansley v. Commonwealth,* 205 Va. 412, 137 S.E.2d 865 (1964), it was held reversible error where, on response to a question from the jury about parole boards, the judge stated simply that "[t]hey have certain powers, rules and regulations," but admonished that the jury "cannot do anything concerning that * * * and [must] not be concerned as to what, if anything, will happen to him at some future time." It is important to note also that in this case the death sentence was given.

However, in *Scarber v. State,* 226 Ark. 503, 291 S.W.2d 241 (1956), the jury inquired as to whether the sentence they gave would be assured without the possibility of parole. The trial judge stated that

> * * * matters of clemency were strictly within the power of the executive department and that such matters should not enter into the jury's final decision which should be based solely on the evidence and the law given them by the court * * *."

This was held not to be error even though the death sentence was imposed and the judge did not directly order the jury not to consider matters of clemency.

In *State v. Quilling,* 363 Mo. 1016, 256 S.W.2d 751 (1953), the death penalty was assessed in a murder case. During its deliberations the jury had inquired about the penalty being "deviated from." The court replied:

> Well, that is the penalty, whatever you assess is the penalty. Now, what happens after that, you can't consider and go into yourselves, you just have to assess the penalty at whatever, if you have in mind assessing a penalty, whatever you are going to decide to do. Now, whatever comes of it after that is something that you are not privileged to have anything to say about or go into further.

This response was held not to be prejudicial error, but merely an "irregularity."

In *Jones v. State,* 88 Ga.App. 330, 76 S.E.2d 810 (1953), defendant was sentenced to the maximum of twenty years for voluntary manslaughter. In the original charge the jury was instructed that it could set a maximum and minimum sentence within the limits prescribed by statute. Later the judge answered an inquiry from the jury about parole by stating that

> * * * the proper authority of the State shall fix rules and regulations whereby the defendant after serving the minimum punishment fixed by you may be allowed to serve the remainder outside of the penitentiary.

The jury, however, was also instructed in the court's answer that these were matters which they must not be concerned with. There was no error in this colloquy.

No doubt the proper response to a jury inquiry about a possibility of a parole would be as approved in the *Porter* and *Hale* cases, supra. In *Pennington v. State,* 364 S.W.2d 376 (Tex.Crim.App. 1962), this response was approved:

> [Y]ou must assume that the defendant will serve whatever term of confinement, if any, assessed by the jury and you will not consider the matter of parole in arriving at your verdict.

Again, in another Texas case, *DeLaRosa v. State,* 167 Tex.Cr.R. 28, 317 S.W.2d 544 (Tex.Crim.App. 1958), this instruction was approved:

> [Y]ou are instructed that the Court can not give you any information concerning the matters indicated; and further, you are instructed that in your deliberations in this case you will adhere strictly to the Charge heretofore given you and be governed thereby.

In these Texas cases the defendants had been sentenced to thirty and forty-five years, respectively.

■ While the *Hale* and *Porter* cases, supra, approve certain specific language by the trial judge, it cannot be said that there are any magic words which must be stated in order to avoid prejudicial error. In the instant case, the matter of parole was, in fact, never mentioned by the trial judge. He stated simply that ''the legislature in Tennessee gave us an indeterminate sentence law and you and I have no control over that.'' We find no prejudicial error in this.

■ The next assignment of error concerns whether the response of the trial judge to the inquiry should have been in writing. T.C.A. sec. 40-2516 says:

On the trial of all felonies, every word of the judge's charge shall be reduced to writing before given to the jury, and no part of it whatever shall be delivered orally in any such case, but shall be delivered wholly in writing. Every word of the charge shall be written, and read from the writing, which shall be filed with the papers, and the jury shall take it out with them upon their retirement.

This statute is valid and imperative, and not merely directory, and must be observed. *Taylor v. State,* 212 Tenn. 187, 369 S.W.2d 385 (1953). However,

* * * '[t]he charge or instruction required by law to be reduced to writing is only that which the court may have to say to the jury in regard to the principles of law applicable to the case and to the evidence; * * * statements as to the form or character of the verdict' need not be in writing. *Taylor v. State,* supra; *Gamble v. State,* 215 Tenn. 26, 383 S.W.2d 48 (1964).

While the response of the trial judge to the jury's inquiry in the case at bar did not concern the form or character of the verdict, it also clearly did not concern "the principles of law applicable to the case and to the evidence." The brevity of the judge's response and the fact that it was merely a warning to the jury not to consider the matter they were inquiring about, force us to conclude that this statement was not intended to be within the scope of T.C.A. sec. 40-2516.

In *State v. Carroll,* 52 Wyo. 29, 69 P.2d 542, 552, 558 (1937), the trial judge made a statement similar to that of the case at bar but more lengthy and more specific about pardons and parole. It was held not improper that this statement was orally made in apparent contraven-

tion of a statute similar to that of this State. In *State v. McGee*, 361 Mo. 309, 234 S.W.2d 587 (1959), it was held unnecessary that a similar statement be in writing, the court noting that these were not instructions on the law of the case such as are required to be in writing. To the same effect is *State v. Lammers*, 171 Kan. 668, 237 P.2d 410 (1951).

Counsel for plaintiff in error cites the case of *Black v. State*, 201 Tenn. 15, 296 S.W.2d 833 (1956), as being controlling of the disposition we must make in the case at bar. That case is clearly distinguishable from the instant case. There the jury returned to the courtroom to ask the trial judge to define "malice" which he did orally. The definition of malice is of utmost importance in the *law* of any murder case; we think that the authors of T.C.A. sec. 40-2516 clearly intended for such a supplemental instruction to be in writing. The Court in that case so found and correctly reversed the conviction.

Therefore, we find no merit in any of the assignments of error, and plaintiff in error's conviction must be affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.

### On Petition to Rehear

MR. JUSTICE WHITE.

From our reading of the petition to rehear, we are of the opinion that it cites no new authority nor does it point to any facts overlooked by the Court in its original opinion. Therefore, under Rule 32 of the Rules of this Court, the petition is not well taken. However, a number of cases are referred to in the petition and four of such

cases were specifically cited and commented upon in our original opinion.

One of the main questions presented in this appeal relates to the answer by the trial judge to a question asked by the jury foreman pertaining to the possibility of parole for the defendant. In our original opinion, we acknowledged that there are jurisdictions which allow the trial judge to comment fully on the possibility of parole and also pointed out that there are other jurisdictions which would not allow the judge to comment at all. Three of the cases cited by the plaintiff in error in the petition to rehear are examples of either one or the other positions just referred to, but these cases are not determinative of the issues presented in this opinion.

It is contended that the jury was guilty of misconduct because it first determined the length of time which the plaintiff in error should serve and then determined the degree of homicide for which he was found guilty. The plantiff in error relies on *State ex rel. Brinkley v. Wright,* 193 Tenn. 26, 241 S.W.2d 859 (1950), as new material which points to the error made by the jury in the case below.

However, the Brinkley case was a habeas corpus proceeding brought in the Circuit Court of Shelby County, attacking a judgment against the petitioner, in which the jury determined the crime committed was murder in the second degree and imprisonment would be for a term of ten years. The petitioner insisted that under the language of Code Section 10770, now T.C.A. sec. 39-2404, the jury was authorized to determine the term of imprisonment only. Brinkley contended that the trial judge was to determine the degree of his crime, based on the prison

term imposed by the jury. The section involved is as follows:

> The jury before whom the offender is tried, shall ascertain in their verdict whether it is murder in the first or second degree; and if the accused confess his guilt, the court shall proceed to determine the degree of crime by the verdict of a jury, upon the examination of testimony, and give sentence accordingly.

We do not see any relationship whatsoever between the facts of the Brinkley case and those in the present case. There is nothing in the record to suggest that the jury acted in any improper manner. Petitioner does conclude from the result reached by the jury that it incorrectly and improperly determined the sentence petitioner should receive before it determined the degree of the crime. We find this argument to be without merit. Even if we were permitted to speculate about what transpired in the confines of the jury room, or in the minds of jurors, our trial system does not allow us to rectify a faulty sequence of consideration by the jury, especially where they have once been instructed in the correct sequence.

We have read the able petition to rehear with great interest but we find nothing therein that would justify the Court in changing the original opinion.

The petition to rehear is, therefore, denied.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.