STATE OF TENNESSEE, Petitioner,

*v.*

CLAUDE LEE LOGAN, Respondent.

453 S.W.2d 766.

(*Knoxville*, September Term, 1969.)

Opinion filed April 6, 1970.

DAVID M. PACK, Attorney General, LANCE D. EVANS, Assistant Attorney General, Nashville, for petitioner.

ROBERT W. SUMMAR, Chattanooga, for respondent.

Mr. Chief Justice Dyer delivered the opinion of the Court.

The respondent here, Claude Lee Logan, has been convicted of murder in the second degree for the slaying of one Robert Bowerman. The case was tried upon a plea of not guilty by reason of necessary self-defense. In the motion for a new trial respondent assigned only one error; that is, the evidence preponderates against the verdict of the jury and in favor of his innocence. The trial judge overruled the motion for a new trial and upon appeal the Court of Criminal Appeals reversed the trial court, remanding the case for a new trial. We have granted certiorari.

The homicide occurred late at night on the streets of Chattanooga. Deceased was shot one time in the head just above the right ear. In a place of business called "Geter's Place," where a dice game was in progress, deceased, in apparent anger, called respondent a "Snitcher." After this deceased left Geter's Place and a short time later respondent also left. The homicide occurred within a very few minutes after respondent left Geter's Place.

The theory of respondent is that after he went out of Geter's Place he was walking down the street when he saw deceased get out of a car with a shotgun in his hand, holding same under his coat; that he continued to walk

on toward the corner and just before he got to the corner he saw deceased raise the shotgun, at which time he pulled a pistol from his right front pocket and thought he shot a little ahead of deceased as deceased seemed to get the shotgun hung in his coat. Respondent claimed the shotgun did go off, but did not hit anyone. Respondent ran on down the street, but as a police car drove up he threw his pistol under a car and was taken into custody by the police officer.

The theory of the State is as follows: That after deceased left Geter's Place he was picked up by three friends driving a Dodge automobile. These three friends suggested to deceased that he go on home, but deceased decided to go back to Geter's Place, as he was not going to be intimidated. These three friends drove deceased back to Geter's Place and shortly after deceased had gotten out of the car into the street, he was fatally shot. The theory of the State is that deceased was not armed and, of course, did not attempt to shoot respondent.

The crucial issue here is whether or not deceased was armed. Although police officers arrived at the scene almost seconds after this incident, a police car in the neighborhood having heard gunfire, the police never did recover any weapons including the pistol respondent said he threw under an automobile, which act of throwing was witnessed by one of the arriving police officers.

There is ample evidence in the record upon which the jury could have reached the conclusion that the theory of respondent was true, in which case there would have been a clear case of self-defense. There is also ample evidence in the record upon which the jury could reach the conclusion it did, that in fact deceased was not armed and self-defense was not a valid defense.

The determinative issue then involves the credibility of the witnesses. We should note there are no facts shown in the record, such as physical facts, which would prove or tend to prove the theories advanced by either respondent or the State were in fact implausible. Under these circumstances by a long line of reported decisions the credibility of the witnesses was settled by the verdict of the jury.

The Court of Criminal Appeals in reversing this case upon preponderance of the evidence apparently gave considerable weight to the fact deceased had a reputation for violence. This fact was properly before the jury on the testimony of one of the police officers.

Taking the comprehensive view of all of the evidence as we must under the assignment of error, we can reach no other conclusion than it is not possible to reconcile the testimony of the witnesses on the crucial issue of whether deceased was armed. Simply put, some of the witnesses are not telling the truth. In such a situation to see and hear the witnesses testify becomes very important. The jury was privileged to see and hear the witnesses and return its verdict. The trial judge also privileged to see and hear the witnesses approved the verdict, and under the facts of this case this settles the matter. The Judgment of the Court of Criminal Appeals is reversed and the judgment of the trial court is affirmed.

CRESON and HUMPHREYS, JUSTICES, and JENKINS, SPECIAL JUSTICE, concur.

McCANLESS, JUSTICE, not participating.