LUTHER SPEARS, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

466 S.W.2d 543.

Court of Criminal Appeals of Tennessee. Nov. 27, 1970.

Certiorari Denied by Supreme Court April 5, 1971.

Lloyd Tatum, Henderson, for plaintiff in error.

David M. Pack, Atty. Gen., Bart Durham, Asst. Atty. Gen., Nashville, Whit LaFon, Asst. Dist. Atty. Gen., Jackson, for defendant in error.

## OPINION

DWYER, Judge.

Luther Spears appeals from a conviction by a jury in the Circuit Court of Chester County of committing

the offense of voluntary manslaughter with resultant punishment of confinement for not more than four years in the State Penitentiary. He appeals through privately-retained counsel and assigns error contending the judgment entered is not in accordance with the law.

■ ■ A perusal of the record reveals the following facts pertinent to bring the assignments of error into focus. The defendant and a friend in the early afternoon went to the defendant's house in Chester County for some libations. They had indulged in quite a few 25-cent and 50-cent shots of white whiskey. On leaving the deceased's house defendant while in the truck of his friend for some reason not clearly developed was struck by the deceased on the head with a hammer. The friend took the defendant home and let him out and then proceeded to his home. The defendant armed himself, had his son drive back to the deceased's home with the defendant calling the deceased outside. The defendant fired his pistol, inflicting fatal wounds upon the deceased. The sheriff and other local officers were called with the sheriff arriving first, finding defendant with pistol in hand standing over the deceased. The defendant told the officer when asked what happened that he had shot the deceased. The sheriff related he told the defendant not to say any more and placed him in the back seat of the squad car. He noted that the defendant had a large bump on his head and would not stop talking. He read the rights card (*Miranda* warning) to the defendant and tried to get him to shut up. The defendant told him all about the shooting; that he owed deceased some money and that they argued about this and that is why deceased hit him with the hammer. He related he

then went home, a distance of around seven miles and armed himself, had his son drive him back to the deceased's home and when the deceased came out he shot him. The Chief of Police of Henderson testified in substance that the sheriff had read the rights card to defendant and that defendant kept trying to tell them what had happened. Nonetheless, a hearing was had outside the presence of the jury and the trial court held that the confession was competent, and allowed it to go to the jury. The defendant contested the confession premising his objection on the fact that defendant was addled as a result of being struck with the hammer and therefore his statement was not competent because it was not the product of a rational intellect and a free will. This is one of the assignments of error put forth by the defendant. In evaluating this contention the officers both testified that defendant appeared to them to know what he was saying; in fact, the record demonstrates extreme fairness on the part of the officers in trying to properly protect defendant's rights and see that he was accorded every right. When the sheriff arrived on the scene he asked defendant what happened. Defendant stated, "I shot him." This statement volunteered by defendant is not hamstrung by the *Miranda* rule. The doctor who examined defendant that evening stated defendant had told him he drank two cans of beer and one-half pint of whiskey. He further related defendant was in good control of his faculties; that the defendant had a large hematoma (bruise) beneath his right eye. He said defendant was foggy but walked all right and made sense. The defendant in the trial testified and related in substance the same version of the slaying that he gave the officers. He also gave a detailed account

of what had taken place (1) that deceased approached him with his right hand in his pocket; (2) that deceased reached out with his left hand and got hold of him; (3) that deceased fell right down beside him; (4) that deceased was some four or five feet from the porch; (5) that he went back because deceased had hit him; (6) that he remembered how fast they drove on his way home and back to deceased's house; and (7) that he remembered the sheriff reading the rights card to him. We relate a few of the above facts which of themselves refute the contention of defendant that his statement was not the product of a rational intellect and a free will. The defendant by his own testimony from a fair reading of the record convinces us that he was not addled to the extent that he was not aware of what he was doing or had done. As that may be, when defendant testified, in substance, he related the same account of the slaying that the officers related he had told them. See Ingram v. State, Tenn.Crim.App., 443 S.W.2d 528. The assignment of error is accordingly overruled.

■ The defendant contends there is an insufficiency of evidence in the record to sustain the verdict and the evidence preponderates in favor of his innocence and against the verdict of guilty. He bottoms his assignments on the untenable position that he acted in his own self-defense and therefore there is and was no violation of any criminal law. The defendant was observed standing over deceased with the pistol in his hand, deceased died of gunshot wounds and defendant admitted to shooting him. The defendant also admitted to traveling seven miles more or less to his home, arming himself and going back to deceased's home to shoot him because

deceased had hit him with the hammer. The jury by its verdict has settled the factual issue of whether or not defendant acted in his own self-defense. See State v. Logan, Tenn., 453 S.W.2d 766. We see no reason whatsoever to disturb this finding of the jury. We find ample evidence to support the verdict as returned. The defendant has not carried the burden placed upon him by our law to remove the presumption of guilt he is under in this court. See Shadden v. State, Tenn.Crim. App., 455 S.W.2d 164.

Defendant next contends that the court erred in separating and then interrogating a lone juror during the course of the trial. The contention is that after the jury had been sworn and proof adduced the assistant attorney general informed the court that he had received information one of the jurors had signed the defendant's appearance bond. The court then ordered the other eleven jurors into the jury room and interrogated the juror in the courtroom. The juror then acknowledged he had signed the appearance bond of the defendant. He related that he had known Luther quite a while. The court then stated to the attorneys he had no recourse but to declare a mistrial, which was promptly objected to by the defendant. The court then undertook to examine the juror to see if he could and would be a fair and impartial juror notwithstanding the fact that he had signed the appearance bond of the defendant. This examination of the juror apart from the others is the basis of defendant's assignment. The court satisfied itself from this examination that the juror could and would be a fair and impartial juror. This issue as evidenced by the record was called to the court's attention by knowledge

received during the trial from the assistant attorney general. The defendant cites Etter v. State, 185 Tenn. 218, 205 S.W.2d 1 and Gray v. State, 194 Tenn. 234, 250 S.W.2d 86. In Etter v. State, *supra,* there was an unexplained separation, which is not to be found in this record. In Gray v. State, *supra,* there was a separation but no contamination by outside influences.

In Cartwright v. State, 80 Tenn. 620, 625, the following language may be found:

"It is the opportunity of tampering with a juror, afforded by the separation which constitutes the ground for a new trial, but if such separation afforded no such opportunity, there can be no cause for a new trial."

The assignment is accordingly overruled.

Defendant next contends that when the jury retired to deliberate they returned and engaged in a colloquy with the court, which the defendant contends that the court indicated by its replies that the penalty fixed by the jury would not be the full sentence that the defendant would be required to serve. We have examined the questions and the answers of the court and jury. In substance, the jury informed the court that they had found defendant guilty of voluntary manslaughter and were concerned if they fixed his punishment at ten years when would he be eligible for parole. This is rather a common occurrence in our trials and puts the trial court in an embarrassing position to say the least. The trial court properly informed the jury that they were not to consider this factor and should not allow this to enter into their deliberations. The defendant cites Porter v.

State, 177 Tenn. 515, 151 S.W.2d 171; Williams v. State, 191 Tenn. 456, 234 S.W.2d 993; Graham v. State, 202 Tenn. 423, 304 S.W.2d 622 and the State relies upon Keith v. State, 218 Tenn. 395, 403 S.W.2d 758. We have read the quoted authorities. We do not think the colloquy had conveyed to the jury that the sentence imposed would not be the full sentence defendant was required to serve. The trial court perhaps should not have engaged in the colloquy had but we cannot say this was prejudicial to defendant. In Keith v. State, *supra,* the following language may be found:

"While the *Hale* [Hale v. State, 198 Tenn. 461, 281 S.W.2d 51] and *Porter* [Porter v. State, 177 Tenn. 515, 151 S.W.2d 171] cases, supra, approve certain specific language by the trial judge, it cannot be said that there are any magic words which must be stated in order to avoid prejudicial error. In the instant case, the matter of parole was, in fact, never mentioned by the trial judge. He stated simply that 'the legislature in Tennessee gave us an indeterminate sentence law and you and I have no control over that.' "

The court in this exchange clearly informed the jury that the questions of parole should not enter into their deliberations. The court informed the jury as required, it was their duty to affix defendant's punishment at the maximum number of years as charged. We therefore accordingly overrule the assignment of error.

■ Defendant next contends the court erred in refusing his special request: "I charge you that you would fix a sentence and assume the defendant would serve the entire sentence." He premises his contention on the as-

sumption that both jurors and lay people think that the State laws are the same as the Federal laws with respect to paroles. He further contends the Federal rule is that if a defendant has a sentence larger than 180 days he is eligible for parole after serving one-third of his sentence. He then reasons that this charge would have ended all speculation by the jury as to what amount of time the defendant would have to serve. The court's charge was full and proper in its instructions to the jury and its duties pertaining to the punishment prescribed. It therefore was not error for the court to refuse the request. See Kyle v. State, 208 Tenn. 170, 344 S.W.2d 537.

All assignments considered and found without merit the judgment of the trial court is affirmed.

WALKER, P. J., and RUSSELL, J., concur.