HENSLEY *v.* STATE.

(*Knoxville,* September Term, 1933.)

Opinion filed Nov. 18, 1933.

KILGO & ARMSTRONG, for Harrison Hensley.

NAT TIPTON, Assistant Attorney-General, for the State.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

552

Plaintiff in error, a deputy sheriff for Greene county, was convicted of voluntary manslaughter, and has appealed to this court. The minimum punishment for that offense is two years' imprisonment in the penitentiary. The verdict of the jury, as recorded on the minutes of the court, is as follows: "Upon their oaths do say that they find the defendant guilty of voluntary manslaughter as charged in the indictment, and that they fix his punishment at confinement in the Penitentiary of the State of Tennessee for a period of not less than one year, nor more than two years, the sentence being an indeterminate period of imprisonment, running from one year as the lowest to two years as the highest."

It is insisted that this is an invalid verdict, as well as the judgment of the trial court based thereon. To this we are unable to agree. Section 11766, Code of 1932, provides as follows:

"Whenever any person over eighteen years of age is convicted of any felony or other crime and punishable by imprisonment in the penitentiary, with the punishment for said offense within minimum and maximum terms provided for by law, the jury in addition to finding the defendant guilty shall fix the maximum term of the convicted defendant and its form of verdict shall be: 'We find the defendant guilty as charged in the indictment,' or 'We find the defendant guilty of .......... (whatever may be the offense charged), and fix his punishment at imprisonment in the penitentiary for not more than ........ years,' and the court imposing judgment upon such verdict shall not fix a definite term of imprisonment, but shall sentence such person to the penitentiary for a period of not more than the term fixed by

the jury, making allowance for good time as now provided by law."

The jury is only required to assess the maximum punishment, which they fixed in this case at two years. So much of their verdict as undertakes to assess a minimum punishment will be treated as surplusage. The judgment of the trial court will be corrected so as to fix the punishment, both maximum and minimum, at two years in the penitentiary.

· It is contended that from the recital in the bill of exceptions and the punishment imposed by the jury they must have found the accused guilty of involuntary manslaughter. The court cannot speculate about such matters, but is governed by the recitals in the minutes.

The jury was justified in finding plaintiff in error guilty of voluntary manslaughter. He had arrested one Worley Cutshaw upon a warrant charging him with a misdemeanor, *viz.*, permitting fire to spread from his premises to that of an adjoining landowner. Cutshaw had been evading arrest and making some threats against plaintiff in error. When arrested, however, deceased offered no resistance. After traveling some four miles on foot, en route to a magistrate's office, and at a point where the road forked, Cutshaw ran and plaintiff in error shot him in the back, inflicting a wound from which he died. We quote from the testimony of plaintiff in error as follows:

"We had gone about four miles and Crawford Hensley and Willie Fann were about two hundred yards ahead of us. I am blind in my right eye and Worley was walking on my right side. We came to a wagon road which turned to the right and the first time I knew anything was wrong, I heard the leaves rustling as he ran. I turned

my head to see with my left eye and he was thirty or forty steps away from me. I then yelled, 'Boys, he is gone,' and started to run after him. I ran in pursuit of him and while running I pulled out my pistol and shot in the ground twice about five steps in front of me and I shot twice about ten yards to the left of Worley in the thicket. Worley ran on for ten or fifteen yards and then turned around facing me and started back towards me, and said, 'You have shot me.' We came back up to the road where the other boys were. I told him he was not shot, and he said he was shot and showed me. We went on back to the road and I went and got a car. Before leaving I told him to lie down and keep cool until the car came after him. I left the other two boys with him. I did not make the statement at any time that if Worley ran I would shoot him. I did not intend to shoot Worley, but meant to scare him so he would stop.''

Plaintiff in error further testified on cross-examination as follows:

''Deceased was not afraid when we arrested him and when he was shot. I do not deny that I shot him while he was running away.''

Dr. Coolidge testified that Cutshaw was brought to his hospital; that he was shot in the back through one of his kidneys, about four or five inches below his heart; that the bullet wound was the cause of his death; that he could not say what size caliber the boy had been shot with, but that it was larger than an ordinary lead pencil. ''I find nothing about this bullet and there was nothing about the wound in the body that indicated the bullet had glanced.''

Mrs. Anne Sexton testified that on the day Cutshaw was shot plaintiff in error came to her home, in com-

pany with her husband, and there made the statement "that he had shot Worley Cutshaw because Worley tried to get away after he had arrested him.".

Dude Sexton testified that shortly after the shooting plaintiff in error stated to him that he had "shot Worley Cutshaw because Worley tried to run away."

Mrs. Dave Cutshaw, mother of deceased, testified that when the arrest was made plaintiff in error told Worley that he would shoot him if he started to run.

Mrs. Lee Cutshaw, wife of deceased, testified that they had three children; that her husband had cleaned off the garden and they claimed that he had let the fire get out of the garden, for which he was arrested; that when he was arrested plaintiff in error said to Worley that he would shoot him if he tried to run; that after he was shot she went to the hospital in Greeneville to see him; and that he told her he was going to die, and that plaintiff in error shot him in the back while he was running away from him.

From the above testimony we think a clear case of voluntary manslaughter, if not murder, is made out, and therefore affirm the judgment of the trial court.