John Taylor,

*v.*

State of Tennessee.

369 S. W. 2d 385.

(*Jackson,* April Term, 1963.)

Opinion filed May 10, 1963.

Petition for Rehearing Denied July 15, 1963.

WILLIAM D. GRUGETT, Covington, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, Nashville, for the State.

Mr. Chief Justice Burnett delivered the opinion of the Court.

Taylor was convicted of an assault with intent to commit manslaughter and sentenced to serve from one (1) to five (5) years in the State penitentiary and to pay a fine of $500.00. From this sentence he has seasonably appealed, able briefs have been filed and arguments heard. After a thorough study of the matter, we now have the case for disposition.

As a result of an argument and a cuss fight, concededly, and claimed self-defense because one Hennings was attacking him with an ax, Taylor shot Milton Hennings through the leg with a pistol on February 15, 1961. Two other shots were fired at Hennings but apparently did not hit him. The difficulty arose between these two men who were cutting wood on Taylor's brother's farm. Taylor's testimony is to the effect that Hennings cursed him and that an argument ensued and that Hennings was attacking him by advancing towards him with an ax and that he fired these shots to discourage this assault upon him. This was denied by Hennings. He testified that he did not start the argument or threaten the defendant with an ax, but admitted that he might have cursed him.

This record is in the narrative form and it is not

necessary for us to go into any greater detail as to the facts shown than above, because there is no claim (very unusual) that the evidence preponderates against the verdict or that the evidence shows that the attack was made in necessary self-defense by Taylor. The testimony here though made an issue for the jury, and it is up to this body to determine which of the witnesses they should believe on the one side or the other. When the jury has thus determined the matter they resolve the conflicts in the testimony and the credibility of the witnesses. This is their duty rather than that of the court. *Hargrove v. State,* 199 Tenn. 25, 281 S.W.2d 692.

■ There are two or three rather interesting questions raised in this lawsuit. It is argued that the trial judge committed prejudicial error in allowing the counsel for the State to cross-examine a certain character witness to the effect that did he know that Taylor had been arrested for gambling and had fought with the arresting officers when he was taken into custody for this offense. This was objected to but the objection was overruled, and we think properly so. Here a witness, a character witness, testified as to the good character of his brother and then after he had done so it was entirely proper to question him about certain charges or rumors of misconduct that he had heard, facts known to him, etc., for the purpose of testing the value of the witness's evidence in chief. *Crawford v. State,* 197 Tenn. 411, 417, 273 S.W.2d 689.

■ ■ It is likewise said that the trial judge erred in failing to instruct the jury that the evidence so elicited on this cross-examination could be considered only by them for the purpose of determining the credibility of the character witness and that it could not be considered on the question of guilt or innocence of the plaintiff in error.

Trial judges are required to make affirmative instructions upon every issue raised by the proof. *Myers v. State,* 185 Tenn. 264, 206 S.W.2d 30. Of course, the word "issue" when thus used means facts put in controversy by the pleadings. Whether or not a character witness took into consideration the acts of Taylor under the circumstances about which he was queried is not put in controversy by the indictment or by the plea of not guilty. It is not in controversy at all. The only question is whether the trial judge should have instructed the jury of the purpose for admitting it into evidence. His failure to so instruct the jury is not such an error as is reversible or fundamental. *Webb v. State,* 140 Tenn. 205, 203 S.W. 955, 15 A.L.R. 1034; *Bishop v. State,* 199 Tenn. 428, 287 S.W.2d 49. The statute, sec. 40-2518, T.C.A. requiring trial judges to charge juries relative to all grades or classes of offenses included in the indictment without a request supports the theory of the State in this particular.

This statement is further supported by a brief quotation from *Poole v. State,* 61 Tenn. 288, 294, 295, wherein this Court a long time ago said:

"The rule that a Court is only required to charge as to such questions as are made by the facts, means simply that if legal questions present themselves by the facts, and which are claimed either to sustain or refute the charges in the indictment, then it is the duty of the Court to charge upon such questions, but if questions not so raised are urged, it is not the duty of the Court to charge touching them. It was never meant that the Court should be excused from defining the offenses averred or embraced in the indictment."

The most interesting point raised in this lawsuit, and

it is very ably argued on behalf of the plaintiff in error, is that the trial court erred when, after the jury had returned its verdict in this case, the trial court orally made a charge to the jury. This came about in this way. The jury returned and reported that they had found the plaintiff in error guilty and fixed his punishment at one to five years in the penitentiary besides a fine of $500.00. It was then that the trial judge stated to the jury, "Gentlemen, it is necessary that you state in your verdict whether or not the defendant is guilty of an assault with the intent to commit murder in the second degree or an assault with the intent to commit voluntary manslaughter. You may either retire to the jury room to consider this matter or may if you wish state your decision from the jury box." After this statement was made the foreman of the jury stated orally that the jury had found the plaintiff in error guilty of an offense to commit voluntary manslaughter and then in response to a query by the trial judge the remainder of the jury indicated by voice or by nodding their heads that the foreman had correctly reported the verdict. It is argued, obviously, that this kind of procedure should not have occurred in open court, but that the jury should have deliberated upon it privately. The trial judge in his written charge to the jury, pages 36 and 37 thereof, instructed them as to various degrees of crime and if they found him guilty of these various things what the punishment was from the minimum to the maximum, etc., which is a correct charge. After the greater offenses upon which this man was indicted had been charged, the trial judge said if they found the man guilty but not guilty of these greater offenses they could proceed to inquire whether or not he was guilty of assault with the intent to commit voluntary manslaughter, and then if they found him guilty

of that offense they would assess his punishment at imprisonment in the penitentiary for not less than one nor more than five years or imprisonment at the county workhouse for any time less than one year, and by a fine not exceeding $500.00. Then the trial judge proceeded if they didn't find him guilty of that offense and found him guilty of a lesser offense what the punishment then would be.

It seems to us that all questions of law were properly charged in writing by the trial court and that the oral statement by the court to the jury after they had returned as above quoted was only an explanation to the jury as to how to mark their verdict and not an instruction as to the law of the case. What happened was nothing more than a restatement of the verdict by the jury which had been previously determined by them after a deliberation in a closed room which had been incorrectly stated by the foreman when they appeared in open court. This jury arrived at a proper verdict but it was incorrectly reported by the foreman, and then it was that a corrected statement of what the verdict was, which was assented to by all the jury, was stated.

It is true that sec. 40-2516, T.C.A., requires, and under this statute it is imperative, that the trial judge give his directions as to the law of the case in writing. This statute is valid and imperative and not merely directory, but must be observed. Where though an oral statement is made after the case has thus been correctly tried on its merits with proper written instructions the plaintiff in error was not prejudiced by this oral statement by the judge explaining an instruction, and the making of such statement is not reversible error. *Munson v. State,* 141 Tenn. 522, 213 S.W. 916. This Munson case

194

is the closest one we have to the question in this State. The question though here presented is very ably discussed by the authors of 23A, C.J.S. Criminal Law sec. 1301, page 732, where among other things it is said: "The charge or instruction required by law to be reduced to writing is only that which the court may have to say to the jury in regard to the principles of law applicable to the case and to the evidence; * * * statements as to the form or character of the verdict" need not be in writing.

We think this is reasonable and applicable to the requirement of the statute.

■ Lastly, it is very ably argued that the verdict was improper because it failed to set out a "definite maximum period of time for the defendant to serve in prison." The verdict of the jury was that they found the man guilty and sentenced him to serve one to five years in the penitentiary. The jury by this verdict clearly fixed or found a maximum term of five years. Their statement of one year, of course, was not necessary because this is fixed by law. Sec. 40-2707, T.C.A. The jury first finds the defendant guilty and then fixes the maximum term within the statutory limits for the particular crime. After this is done the judge sentences the defendant to an indefinite period of not more than the maximum set by the jury and for the minimum period as provided by the statute. Then, of course, after the minimum period is served (less "good time") the defendant may be considered for parole. Once the jury has fixed the maximum punishment, any attempt by the jury to fix the minimum period is treated as mere surplusage, even though the minimum thus fixed is below the statutory minimum for the crime involved. *Hensley v. State,* 166 Tenn. 551, 64 S.W.2d 13. There have been over the years various ver-

dicts of the kind in unreported cases wherein when the jury fixes the maximum it has been held that this is all that is required. The jury may fix the maximum term at the minimum as provided by statute. *State ex rel. Brinkley v. Wright,* 193 Tenn. 26, 241 S.W.2d 859. This Section of the Code that we have talked about with reference to fixing the maximum sentence (sec. 40-2707, T.C.A.) sets forth the form and clearly when the jury fixes the term which is less than the minimum under the statute this charge of the court that they found this man guilty of involuntary manslaughter then they should fix his punishment in accordance with sec. 39-2411, T.C.A., that is that he undergo confinement of not less than one nor more than five years.

For reasons herein stated we think the judgment below must be affirmed.

### On Petition to Rehear.

Counsel has filed herein a very forceful and dignified petition to rehear. Some new authorities are cited and certain things brought to our attention, all of which we will hereinafter consider.

In reading the record, which is in the narrative form, we have no doubt about it, but there is ample evidence to support the verdict of the jury, and the evidence does not preponderate against such verdict. One of the essential questions raised by this petition to rehear is that there was no showing of any evidence of "an intent to kill," nor does the charge of the court tell the jury that "an intent to kill" was necessary before the man could be convicted of an intent to commit manslaughter. We have carefully read this charge again and find when you take the charge as a whole, taking into consideration

the charges and things necessary for murder in the first degree and murder in the second degree, and then the charge on the intent to commit manslaughter, all read together the charge clearly tells the jurors that ''an intent to kill'' is one of the necessary prerequisites to find plaintiff in error guilty of such an act. The charge of the court on voluntary manslaughter, or the intent to commit such, follows a page and a half on the charge in reference to murder in the second degree. In this charge the court clearly tells the jury that the law requires an intention to do any unlawful act which would probably result in depriving a person of life. It is likewise charged in this section of the charge, which we are referring to, the question of malice and whether or not it is required and the requirements of it, and also what presumption arises from the use of a deadly weapon and things of that kind. Thus it is we think the charge as a whole when read clearly complies with the criticism here made. In Wharton on Homicide, 3rd Ed., at page 227, this very succinct and correct statement of law applicable to crimes of this kind in this State is made, to-wit:

''The unjustifiable, intentional, and deliberate use of a deadly weapon, or a use of such a weapon from which death would be liable to result, gives rise to an inference of the deliberate and premeditated intent to take life necessary to make a resultant killing murder in the first degree.''

The author then goes on to discuss various and sundry factual situations with reference to different kinds of murder. Authorities from practically every State in the Union are cited as authority for the above quoted statement, including our old case of *Swan v. State*, 23 Tenn.

136. Then in the same authority, Wharton, at page 253, this very correct statement is made:

"And a killing without malice and without deliberation, though with a deadly weapon, may be manslaughter only."

Thus it is that we are well satisfied that there is no error in this regard.

Another question is raised which was raised on the original hearing before us, and we considered it in our opinion and are satisfied that the conclusion there reached is the correct one. This question now again raised is that the trial judge gave the jury oral instructions relative to the law in the case, and another question again argued is that the jury did not fix a maximum sentence. We considered both of those questions in our original opinion and are satisfied that we are correct therein.

 A question now raised for the first time in this case is that it is not proper for the jury to fine a defendant $500.00, which they fined him after sentencing him to serve in the penitentiary. As authority for this proposition the case of *Morton v. State,* 91 Tenn. 437, 19 S.W. 225, is cited. In that case this Court held that the meaning of the statute, sec. 39-603, T.C.A., was that a convict shall be punished either by imprisonment in the penitentiary without more, or by imprisonment in the county jail and a fine; and whether the one mode or the other shall be adopted is left to the discretion of the jury. Since the jury imposed the fine when they had no right to under this statute, which is the same statute that the man here, Taylor, was sentenced under, this was an invalid verdict and the fine should be stricken and for nothing held. The Morton case, supra, was last cited by this Court in 1915,

in *State v. White*, 132 Tenn. 203. It is unquestionably good law and is a reasonable and proper construction of the statute (sec. 39-603, T.C.A.). We therefore accept and adopt this construction and strike from the judgment herein the fine of $500.00.

We have carefully considered all matters so ably raised in this petition to rehear and as thus modified, that is by striking the $500.00 fine, the judgment below must be affirmed.