**Steve MEEKS and Charles E. Meeks, Plaintiffs-in-Error,**

**v.**

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

July 17, 1974.

Certiorari Denied by Supreme Court Jan. 13, 1975.

Quinton Horton, McMinnville, for plaintiffs-in-error.

David M. Pack, Atty. Gen., Alex B. Shipley, Jr., Asst. Atty. Gen., Nashville, J. Wm. Pope, Jr., Dist. Atty. Gen., Pikeville, Mike Lynch, Asst. Dist. Atty. Gen., Winchester, for defendant-in-error.

## OPINION

MITCHELL, Judge.

The defendants Steve Meeks, Charles Edward Meeks and Harold Lecil Nolan represented by their Attorney Honorable Quinton F. Horton, were convicted of concealing stolen property over the value of $100.00 at their joint trial on July 31, 1973

in the Circuit Court of Grundy County, Tennessee. The jury fixed the punishment of each defendant at three years in the penitentiary upon which the Trial Judge Honorable Paul A. Swafford pronounced judgment of not less than three nor more than three years in the state penitentiary.

After the new trial motion of the defendants had been heard and overruled, the trial judge suspended the three years sentence imposed upon Harold Lecil Nolan and placed him on probation under the supervision of the probation officer.

The defendants Steve Meeks and Charles Edward Meeks appealed and assigned errors.

On February 20, 1973, Cecil R. Perkins, who was then employed by the Tennessee Valley Authority, lived at Mimosa Trailer Park on Highway 27 in the Soddy-Daisy, Red Bank area, between Chattanooga and Dayton.

On the night of the above mentioned date Mr. Perkins' 1972 Chevrolet Fleetside pickup truck was stolen from the place where he and his wife had parked and locked it, in front of his house. Mr. Perkins had bought the truck new in April 1972 at the price of $4,465.70 from Bobby Mitchell of Florence, Alabama. The owner had installed a camper on it worth $200.00, and he had $2,000.00 worth of tools in the truck when it was stolen.

Mr. Perkins reported the loss of the truck to the Daisy police and called the sheriff of Grundy County.

Mr. Perkins introduced his bill of sale or invoice which was given him at the time he bought the truck, which showed the identifying number and purchase price, as well as the value of the vehicle which he "traded in" on the purchase at the time he acquired the truck.

His truck when found had been stripped of the windshield, two doors, front bumper and fenders, transmission, air-conditioner, power steering, motor and front wheels.

This truck in its stripped condition was found by the Grundy County Sheriff, who on February 26, 1973, in response to a call, went with Officer Fults to the vicinity of the house of the defendant Steve Meeks. The Sheriff and his officers saw and observed physical evidence indicating the truck had been dragged from the rear of Steve Meeks' house across part of a stubble bean field into a woods nearby.

The wife of Charles Meeks warned the defendants of the presence of the Sheriff and his officers and yelled to them to run. The defendants ran but Charles Meeks was found lying down near the creekbank. Steve Meeks went under a barbed wire fence and escaped into the woods.

The Sheriff saw two doors, which had been removed from the truck, laying at the rear of Steve Meeks' house, at the point from which the truck had been dragged.

The owner of the stolen truck identified two large gasoline cans, of the army salvage type, stolen with the truck and shown in the picture filed as an exhibit in the case. These cans were found by the officers, on the property of the defendant Steve Meeks, from which the defendants had dragged the remains of the truck.

The defendant Charles Edward Meeks made a voluntary statement to Criminal Investigator Charles Hopson at the office of Honorable Quinton F. Horton, counsel for the defendants, on March 3, 1973, as follows:

"Monday February the 26th, 1973, my brother Steve Meeks told me he wanted me to move a truck for him from the back of his house, and that I would have to get someone to help me. I then went to Harold Lecil Nolan's house and got him. This was late in the afternoon, still daylight. Nolan was at his mother-in-law's house. When we got to my brother's house, I found a truck that had been stripped, the cab, one seat, battery and running gear was there. Back wheels still there and the front wheels were

gone. Steve and Nolan hooked a chain to the truck and my car, which I had backed up to the truck. After it was hooked up, and I pulled out from the house and I started back out, Sheriff Winton blocked the road and stopped me. At this time Steve and Nolan ran off.

This statement is true and given of my free will and my attorney present. Signed Charles Edward Meeks and Harold Lecil Nolan."

The defendant Charles Meeks testified that on February 26, 1973 his brother Steve Meeks the co-defendant, asked him to get somebody to help move the truck from behind his house. At Charles Meeks' request the co-defendant Harold Lecil Nolan consented to help them move the truck and went with Charles Meeks to the place where the truck was found.

Charles Meeks testified they hooked the truck to the rear bumper of his car. That with the help of his brother Steve and Nolan, they pulled the truck across the bean field and into the woods a distance of about 250 yards from Steve's house. That they unhooked from the truck, and he started back out. That he jumped out and ran when the sheriff blocked the road on him and he was the only one that was caught that day.

Charles Meeks testified he and his brother Steve were afraid the officers of the law would not believe that he and Steve found the truck, so they just pulled it off the property.

We quote from the bill of exceptions a part of the testimony of Charles Edward Meeks:

"Q. Now you heard the Sheriff and the deputies tell the story about they came on to the scene and your wife was up there in the field somewhere?

A. Yes.

Q. Is that correct?

A. Yes, sir.

Q. All right, what what was she doing up there?

A. Well, she was, I don't know, she got afraid or something and came up there.

Q. What was she afraid of?

A. She was afraid they might, you know, get the wrong idea and stuff. Afraid that they might think that we might have done it.

Q. And so then is it fair to say that you think she came to warn you that the Sheriff was coming?

A. Yes, sir.

Q. And when did you first become aware that the Sheriff was coming?

A. Well, when he blocked the door, I mean blocked the road and I heard them slam the door and I just happened to look and there he was.

Q. And then did you jump out and run?

A. Yes, sir.

Q. Did your wife yell and tell you to jump out and run?

A. Yes, sir.

Q. And of course the Sheriff did catch you?

A. He didn't catch me, I run down there and stopped. I could see him and I run down there and stopped and just waited there.

Q. Well, now, you heard him testify here and am I correct in saying that you're version of this story essentially agrees with what the Sheriff says happened?

A. Yes, sir, all except he said that I had greasy hands and I did not have greasy hands."

We quote a part of the defendant Charles Meeks' cross-examination:

"Q. Now coming down to the line of questioning that Mr. Horton asked you about, it didn't strike you as strange that here was this vehicle up there behind your brother's house and you didn't ask any questions why he wanted you to come up there and move that vehicle?

A. Well, he's afraid the law wouldn't . . . .

Q. What was he afraid of?

A. He's afraid the law wouldn't believe that he found it.

Q. That he found it?

A. Yeah.

Q. Or that he stole it?

A. No, he found it, that's what he said.

Q. He's afraid that the law would not believe that he found it?

A. Yes, sir.

Q. And you were afraid that the law would not believe that he found it or that you were found with him and that's why you ran?

A. Yes, sir."

Charles Edward Meeks in his flight ran out of his jacket. He said that while he was running "a limb kind of grabbed it."

The defendant Steve Meeks age 26, testified he was a driver of a lumber truck. That he and his wife were separated at the time they dragged the stolen truck from the rear of his house to the woods. That he had not been staying in his house for several weeks. On the morning of February 26, 1973, for no particular reason, he walked up to his house which was the shape of an L. That there in the L corner of the house he saw this truck. It had been disassembled and everything was gone from it except the bed, the running gear, cab and doors. The doors were there but had been removed from the truck and there were some papers in the bed of the truck. (These papers apparently were the personal documents of the owner Cecil R. Perkins which he had hanging on a wire in the back of the truck.) We here quote from the bill of exceptions part of the testimony of the defendant Steve Meeks:

"Q. Do you remember seeing the papers that they've shown here that were on that hook, in and about that truck?

A. Yes, sir, they were laying in the bed of the truck.

Q. All right, after you discovered this, what did you think, what was your reaction up there at that time?

A. I just wanted to get the truck and go on, and just get off the property, that's all I cared about.

Q. Had you ever seen the truck before?

A. No, sir.

Q. What did you do then?

A. I went down to my mother's and I's talking to her about it and I told her I'd found it up there and she wanted me to call Sheriff Lewie Winton and have him send a wrecker out there and get it. And I thought about it a few minutes, and it was sitting right behind my house there, and it was pretty hard to believe. I admit that myself and I didn't figure the law would believe it. I just went and asked Ed if he could find somebody to help me move it.

Q. Was his wife there when you asked him?

A. Yeah, I believe so.

Q. Do you specifically remember that she was present when you asked him to get somebody?

A. Yes, sir, she was there.

Q. Well, then what did Edward do?

A. He asked me how come it there and if I knowed anything about it and I told him, no. And he asked me what all was gone off of it and I told him just about everything, and he said he'd go see if he could find somebody."

The "Edward" to which reference is made is the defendant Charles Edward Meeks.

Steve Meeks said he did not surrender to the officers until several weeks after he fled from the sheriff. That he did not report the finding of the stolen truck to the sheriff because he doubted if the sheriff would have believed it.

Steve Meeks testified he did not see the truck until he found it behind his house in its stripped condition. That he did not put it there and did not know who left the truck behind his house.

The co-defendant Harold Lecil Nolan substantially corroborated the testimony of Charles and Steve Meeks. Nolan testified the first knowledge he had of the stolen truck was when Charles Edward Meeks asked him to help him move it, and he went with Charles and saw the truck parked behind the house.

It is the theory of the defendants that the first time they saw the stolen truck was when they found it at the rear of the residence of the defendant Steve Meeks. That they did not put it there, did not know how or when it was brought there, and did not know it was stolen. That they moved it into the woods to get it off of Steve's property, because they were afraid the officers of the law, if they found it, would think the defendants stole it.

They further contended that there were people in the neighborhood who did not like them. That some of those people had been caught and convicted and might have suspected that the defendants reported or turned them in. That some of these people might have planted the stolen truck on Steve Meeks' property.

### ASSIGNMENTS OF ERROR

The defendants' 1st assignment of error is that the trial court erred in denying the motion to exclude any evidence that the defendant Steve Meeks had visited or been in the vicinity of Red Bank prior to the date the vehicle was stolen, and where the vehicle had been stolen from on the grounds that it would tend to prove the theft of the vehicle with which the defendants were not charged.

This assignment is particularly based on a question which the district attorney asked the defendant Steve Meeks, to-wit: "During the month of February around the 20th day of February did you ever have an occasion to spend the night and stay over on Highway 27 in the Red Bank-Daisy area?", to which the defendant replied "Yes."

It is the defendant's contention that this evidence was not relevant or material to the issues in the case because it tended to poison the minds of the jury by inferring that one of the defendants' familiarity with and presence in the area where the vehicle was stolen would tend to prove the theft of the vehicle, and the indictment did not charge larceny of the vehicle.

With this contention made under this first assignment we cannot agree.

Although there was no count in the indictment charging larceny of the vehicle, the indictment did charge the defendants with concealing the Chevrolet pick-up truck of Cecil Perkins knowing it to have been stolen. Therefore guilty knowledge is

a necessary element of the crime of concealing stolen property.

We think evidence tending to prove the theft of the truck is relevant and material even if it had shown the defendant stole the truck. We can think of no more effective manner of showing guilty knowledge on the part of the defendant than to prove that he stole the truck.

T.C.A. 39–4217 is as follows:

"39–4217. Receiving stolen goods over one hundred dollars in value—Penalty.—

(A) Every person who shall fraudulently receive or buy any goods over the value of one hundred dollars ($100), feloniously taken or stolen from another, or goods obtained by robbery or burglary, knowing the same to have been so obtained, with the intent to deprive the true owner thereof, shall be guilty of receiving stolen property over the value of one hundred dollars ($100).

(B) Every person who shall fraudulently conceal or aid in concealing any goods over the value of one hundred dollars ($100), feloniously taken or stolen from another, or goods obtained by robbery or burglary, knowing the same to have been so obtained, with the intent to deprive the true owner thereof, shall be guilty of concealing stolen property over the value of one hundred dollars ($100).

(C) Any person found guilty of either receiving stolen property over the value of one hundred dollars ($100), or concealing stolen property over the value of one hundred dollars ($100), shall be imprisoned in the penitentiary not less than three (3) years nor more than ten (10) years."

The truck was stolen from the owner Cecil R. Perkins on the night of February 20, 1973. Six days later on February 26, 1973, it was found in the possession of the defendants where they were concealing the stripped down remains of the truck in the woods near the home of the defendant Steve Meeks.

In Myers v. State, 4 Tenn.Cr.App. 314, 470 S.W.2d 848, in a well considered opinion by Judge William S. Russell we said:

"The unexplained possession of recently stolen property raises an inference that the possessor stole the property. Peek v. State, 213 Tenn. 323, 375 S.W.2d 863. This inference has been applied recently to infer guilty knowledge where receiving stolen property is concerned. Tackett v. State, 223 Tenn. 176, 443 S.W.2d 450. Such an inference logically also attaches to such unexplained possession of recently stolen property when the charge is concealing."

In Gossett v. State, 224 Tenn. 374, 455 S.W.2d 585, the Court said:

" 'In *Deerfield* [Deerfield v. State, 220 Tenn. 546, 420 S.W.2d 649] we held that where the only proof in the case was that the property had been stolen by Deerfield, he could not be convicted for the offense of receiving it. In Kessler we restated the objective test rule as to guilty knowledge of the theft, first adopted in this state in Wright v. State, 13 Tenn. 154, restating it in accordance with Wharton's Criminal Law and Procedure:

'That is, the existence of guilty knowledge is to be regarded as established when the circumstances surrounding the receipt of the property were such as would charge a reasonable man with notice or knowledge or would put a reasonable man upon inquiry which if pursued would disclose that conclusion.' Wharton's Criminal Law & Procedure, Anderson, Vol. 2, p. 281, § 568.

In Tackett, the Court held that neither Deerfield nor Kessler had any direct application to the facts of that case. In Tackett we held another proposition applicable:

'While it is the rule as first held in Wright v. State, supra, and as restated in Kessler, that guilty knowledge is necessary to sustain a conviction for re-

ceiving and concealing stolen property, it must also be the rule, because logic and good judgment require it, that the unexplained exclusive possession of stolen property shortly after commission of the robbery may warrant a finding that the possessor has guilty knowledge of the larceny or robbery. And unless this exclusive possession of stolen property after larceny · or robbery is accounted for in a straightforward, truthful way, and unless the jury, finds the explanation reasonable and satisfactory, the jury would be warranted in returning a verdict of guilty of receiving and concealing stolen property.' "

\*    \*    \*    \*    \*    \*

"This Court has no authority to raise inferences nor to substitute its judgment upon proven facts for the judgment of the jury. Inferences to be drawn upon circumstantial evidence are for the jury and not for the appellate tribunal, and it is not the province of this Court to substitute its own inferences for those drawn by the jury. Smith v. State, 205 Tenn. 502, 327 S.W.2d 308; Nichols v. State, 200 Tenn. 65, 289 S.W.2d 849; Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856; Stanley v. State, 189 Tenn. 110, 222 S.W. 2d 384."

\*    \*    \*    \*    \*    \*

"The undisputed proof conclusively shows the Defendants in possession of the cartons within a few hours of the burglary. The jury evidently felt warranted in foregoing this verdict in favor of the receiving and concealing count because there was no direct evidence that the Defendants broke and entered and carried away the property and we must assume the jury refused to believe that the Defendants just found it. This character of possession clearly warrants the inference in the absence of a reasonable and honorable explanation that the Defendants knew the property had been placed there even if they did not place it there themselves and they received it from the per-

son who did place it there with guilty knowledge of its theft. Thus, it comes within the rule laid down in Tackett v. State, supra."

In the case at bar, by their verdict, the jury as they had a right to do, rejected the defendants' explanation of the possession and concealing of the stolen truck.

The jury as the triers of the facts, in making a determination of the weight and credibility of the defendants' testimony, were not required to believe the defendants' explanation, and where the jury does not believe the explanation offered by the defendants then their possession of the stolen property was unexplained.

██ The 2nd assignment of error is that the evidence preponderates against the jury verdict. This assignment must be considered under the well known rule that the verdict of the jury approved by the trial judge takes away the presumption of innocence which stood as a witness for the defendants in the trial court and they are here under the presumption of guilt. The burden is on the defendants to show that the evidence preponderates against the verdict and in favor of their innocence. The verdict of the jury, approved by the trial judge, accredits the testimony of the witnesses for the prosecution and establishes the theory of the State. We may not overturn a conviction on the facts, unless the evidence clearly preponderates against the verdict and in favor of the defendant's innocence. White v. State, 210 Tenn. 78, 356 S.W.2d 411; Holt v. State, 210 Tenn. 188, 357 S.W.2d 57; Schweizer v. State, 217 Tenn. 569, 399 S.W.2d 743; Webster v. State, 1 Tenn.Cr.App. 1, 425 S.W.2d 799; Black v. State, 1 Tenn.Cr.App. 373, 443 S.W.2d 523.

The 3rd assignment of error is that the trial judge gave in charge to the jury certain matters concerning sentencing but failed to submit that charge in writing. That after the jury had deliberated fifty-two minutes they reported a verdict which was erroneous. That the trial judge then

gave further charge to the jury which was not in writing.

We are unable to find any merit in this 3rd assignment.

The bill of exceptions shows that the learned trial judge fully and adequately charged the jury, asked counsel for the state and the defendant if there were any special requests. After receiving a negative reply from the district attorney and the defense counsel the trial judge said to the Jury:

"Members of the jury take the indictment and a copy of this charge with you and begin your deliberation, and when you have reached a verdict why, you may report to the Court. You may retire and consider your verdict at this time."

After about 52 minutes the jury returned into open court and in response to the inquiry of the trial judge reported that they had reached a verdict and that they found the three defendants guilty of concealing stolen property.

The bill of exceptions shows the following took place between the jury and the trial judge:

THE COURT: Of what?

FOREMAN: However, we the jurymen, would like to recommend that the two (2) Meeks boys, be sentenced to three (3) years in the penitentiary and make an exception on the Nolan, and sentence Mr. Nolan to eleven (11) months and twenty-nine (29) days in the county workhouse.

THE COURT: Well now, let me inquire further. The defendants are guilty of concealing stolen property of what value?

FOREMAN: More than One Hundred Dollars ($100), sir.

THE COURT: More than One Hundred Dollars ($100)?

FOREMAN: Yes, sir.

THE COURT: And you fix the punishment for, well, the minimum punishment for concealing stolen property under the value, over the value of One Hundred Dollars ($100), is three (3) years.

FOREMAN: Your Honor, maybe we took this wrong then, referring back to if you are under the opinion that the prescribed punishment is too severe.

THE COURT: In the latter, that refers to a finding of concealing under the value of One Hundred Dollars ($100). Of course you don't have to find all the defendants guilty of the same offense.

FOREMAN: Then would you like for us to . . .

THE COURT: Go back and consider a little bit more on this in view of the three (3) parties in this. I might say this before you go, any recommendations you make to the Court as far as leniency or anything like that, the Court is not bound by it, but will of course give it some consideration as a matter of punishment.

(Whereupon, the jury retired to the jury room at 5:21 P.M., and returned to the Court room at 5:28 P.M., after which the following proceedings took place.)

THE COURT: Do you gentlemen waive the call of this jury?

GENERAL POPE: Yes, Your Honor.

MR. HORTON: Yes, Your Honor.

THE COURT: Have you reached a verdict, gentlemen of the jury?

FOREMAN: Yes, sir, we have.
THE COURT: How do you find?

FOREMAN: Your Honor, we find the three (3) defendants guilty of receiv-

ing and concealing stolen property over One Hundred Dollars ($100.)

THE COURT: Concealing stolen property, they weren't charged with receiving stolen property.

FOREMAN: Yes, sir.

THE COURT: How do you fix the punishment?

FOREMAN: We recommend punishment of three (3) years in the penitentiary, however we would like to recommend leniency for Mr. Nolan.

THE COURT: You fix the punishment for each of the defendants three (3) years in the state penitentiary and recommend to the Court to consider leniency in the case of Mr. Nolan?

FOREMAN: Yes, sir.

THE COURT: As I explained a while ago, you understand the Court is not bound by that recommendation, but will consider it.

FOREMAN: Yes, sir, we understand.

THE COURT: So say you all, ladies and gentlemen of the Jury, indicate by raising your right hand if you concur in what your foreman has stated."

The trial judge gave the jury explicit instructions concerning the offense of concealing stolen property and the punishment provided in T.C.A. 39–4217, T.C.A. 39–4218, and T.C.A. 39–4205. He also instructed the jury that:

"Three defendants are being tried under one indictment. This does not mean that the charge against the defendants must take the same course. You may, of course, acquit or convict all of the defendants, but you may convict some and acquit the others. You may find some defendants guilty of one offense included in the indictment, and the others guilty of the other offense included in the indictment."

The jury had reported to the trial judge that they had reached a verdict and that they found all three of the defendants guilty of concealing stolen property of value in excess of $100.00 and that they recommended three years sentence in the penitentiary for the two Meeks boys, and eleven months and twenty-nine days in the workhouse for the defendant Nolan.

■ The trial judge had previously in his written charge correctly charged the jury concerning the punishment for concealing stolen property in excess of $100.00 value and the punishment for concealing stolen property where the value did not exceed $100.00. So when the jury proposed to fix Nolan's punishment at 11 months and 29 days in the workhouse after they had found him guilty of concealing stolen property over the value of $100.00, the trial judge merely repeated a part of his previous instruction to the effect that the minimum punishment for concealing stolen property in excess of the value of $100.00 was three years in the penitentiary.

Then when the trial judge told the jury that they did not have to find all the defendants guilty of the same offense this was a reminder of the written instructions he had previously given them that they could find some guilty of one offense embraced in the indictment and others guilty of the other offense. We think this additional oral charge or instruction by the trial judge was but a reiteration of parts of his written charge which he had previously given to the jury.

■ We think the trial judge's comment to the jury that he would not be bound by the recommendation of the jury concerning leniency was merely a warning to the jury and was not within the scope of T.C.A. 40–2516. Keith v. State, 218 Tenn. 395, 403 S.W.2d 758.

Taylor v. State, 212 Tenn. 187, 369 S.W.2d 385, was a case where the defendant was convicted of assault with intent to commit voluntary manslaughter and sen-

tenced to 5 years in the penitentiary and to pay a fine of $500.00.

There the jury reported that they found the defendant guilty and fixed his punishment at one to five years in the penitentiary besides a fine of $500.00. Then the trial judge orally stated to the jury:

"Gentlemen, it is necessary that you state in your verdict whether or not the defendant is guilty of an assault with intent to commit murder in the second degree or an assault with intent to commit voluntary manslaughter."

The Supreme Court said:

"The trial judge in his written charge to the jury, pages 36 and 37 thereof, instructed them as to various degrees of crime and if they found him guilty of these various things what the punishment was from the minimum to the maximum, etc., which is a correct charge. After the greater offenses upon which this man was indicted had been charged, the trial judge said if they found the man guilty but not guilty of these greater offenses they could proceed to inquire whether or not he was guilty of assault with the intent to commit voluntary manslaughter, and then if they found him guilty of that offense they would assess his punishment at imprisonment in the penitentiary for not less than one nor more than five years or imprisonment at the county workhouse for any time less than one year, and by a fine not exceeding $500.00. Then the trial judge proceeded if they didn't find him guilty of that offense and found him guilty of a lesser offense what the punishment then would be.

It seems to us that all questions of law were properly charged in writing by the trial court and that the oral statement by the court to the jury after they had returned as above quoted was only an explanation to the jury as to how to mark their verdict and not an instruction as to the law of the case. What happened

was nothing more than a restatement of the verdict by the jury which had been previously determined by them after a deliberation in a closed room which had been incorrectly stated by the foreman when they appeared in open court. This jury arrived at a proper verdict but it was incorrectly reported by the foreman, and then it was that a corrected statement of what the verdict was, which was assented to by all the jury, was stated.

It is true that § 40–2516, T.C.A., requires, and under this statute it is imperative, that the trial judge give his directions as to the law of the case in writing. This statute is valid and imperative and not merely directory, but must be observed. Where though an oral statement is made after the case has thus been correctly tried on its merits with proper written instructions the plaintiff in error was not prejudiced by this oral statement by the judge explaining an instruction, and the making of such statement is not reversible error. Munson v. State, 141 Tenn. 522, 213 S.W. 916. This Munson case is the closest one we have to the question in this State. The question though here presented is very ably discussed by the authors of 23A, C. J.S. Criminal Law § 1301, page 732, where among other things it is said: 'The charge or instruction required by law to be reduced to writing is only that which the court may have to say to the jury in regard to the principles of law applicable to the case and to the evidence; * * * statements as to the form or character of the verdict' need not be in writing."

The defendant's 4th assignment of error is that the State failed to prove the value of the property at the time it was found to have been concealed by the defendants.

We find the 4th assignment of error is without merit.

The trial judge in his charge to the jury instructed them on the subject of concealing stolen property over the value of $100.-

00 and on concealing stolen property under the value of $100.00. The jury specifically found the defendants guilty of concealing stolen property in excess of the value of $100.00.

The defendants contend the State failed to prove the value of the property at the time it was found.

It is true that there was no testimony that the truck when found was of more value than $100.00, but the prosecution introduced and properly identified two color photographs which showed the truck with the cab, bed, frame and two rear wheels· mounted with tires. These two photographs showed the truck in two-tone trim of green and white, and that the truck had apparently been well kept. The two doors of the truck were found at the rear of Steve Meeks' house from which point the defendants had dragged the truck across the field into the woods 250 feet away.

The proof showed this truck had been bought new at the price of $4,465.70 in April 1972, and had been in use by the owner less than a year. The owner at the time the truck was stolen, was a mechanical job foreman and had been employed by the Tennessee Valley Authority for 23 years.

In the testimony of Mr. Perkins the owner of the truck, the district attorney asked him "Needless to say, twice the value of the property that was taken from you, specifically the truck, would it be over the value of one hundred dollars ($100.-00)?" Mr. Perkins answered "Yes sir, it would."

■ We think the jury could properly consider the original purchase price of the vehicle, together with the photographs of the remainder of the truck after it had been recovered, and could logically infer that the cab, seat, bed frame, two doors, and two rear wheels mounted with tires were of more value than $100.00.

■ In rejecting the defendants' unimpressive explanation of their possession of the stolen truck the jury apparently were unable to overlook the significant testimony of the defendants when the defendant Charles Edward Meeks testified his wife was afraid the officers might get the wrong idea and "think that we might have done it," and that his brother co-defendant Steve Meeks "was afraid the law wouldn't believe that he found it" and Charles Meeks admitted he ran because he was afraid the officers of the law wouldn't believe that Steve found the truck.

Moreover Steve Meeks testified he told his mother about the truck and she advised him to call the sheriff to come and get it. He said he thought about it a few minutes, "and it was sitting right behind my house there, and it was pretty hard to believe. I admit that myself and I didn't think the law would believe it."

The defendants seem to recognize the doubtful credibility of their explanation about the concealment of the stolen truck.

We think the actions and conduct of the defendants and their effort to explain the predicament in which they found themselves involved with the stolen truck, were "such as would charge a reasonable man with notice or knowledge or would put a reasonable man on inquiry which if pursued would disclose" that the truck was stolen. Gossett v. State, supra.

We find the defendants have failed to carry the burden of showing that the evidence preponderates against the verdict and in favor of the defendants' innocence.

The assignments of error are overruled and the judgment is affirmed.

O'BRIEN and GALBREATH, JJ., concur.