IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 2000 Session

## STATE OF TENNESSEE v. TYWAN FAULK

**Appeal as of Right from the Circuit Court for Montgomery County**
**No. 39811     Robert W. Wedemeyer, Judge**

---

**No. M1999-01124-CCA-R3-CD - Filed August 31, 2000**

---

The appellant, Tywan Faulk, appeals his conviction by a jury in the Montgomery County Circuit Court of one count of possession of more than .5 grams of cocaine with intent to deliver and within 1,000 feet of a school, a class A felony. Prior to trial, the appellant pled guilty to driving on a revoked license, a class B misdemeanor. Pursuant to the appellant's conviction for possession of cocaine with intent to deliver, the trial court imposed a sentence of fifteen years incarceration in the Tennessee Department of Correction. Additionally, the trial court imposed a sentence of thirty days incarceration in the county jail for the driving on a revoked license conviction. The trial court further ordered that the appellant's sentences be served concurrently. On appeal, the appellant presents the following issues for review: (1) whether the trial court erred in denying the appellant's motion to suppress evidence seized as a result of an unlawful detention; (2) whether the trial court erred in denying the appellant's motion for judgment of acquittal with regard to possession with intent to sell or deliver at the close of the State's case in chief as the evidence was insufficient to support the conviction; (3) whether the trial court erred by allowing the arresting officer to testify that the passenger in the appellant's car had a certain amount of cash in his possession; (4) whether the trial court erred by giving supplemental instructions to the jury without first putting the instructions in writing; (5) whether the trial court erred by repeatedly referring to the prosecutor as "General" in the presence of the jury throughout the proceeding; and, (6) whether the prejudicial effect of these errors cumulatively requires reversal of the appellant's conviction. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J. and JOE G. RILEY, J. joined.

Carrie W. Kersh, Clarksville, Tennessee, for the appellant, Tywan Faulk.

Paul G. Summers, Attorney General and Reporter, Todd R. Kelley, Assistant Attorney General, Daniel Brollier, Assistant District Attorney General, and Lisa Donegan, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Factual Background.**

On November 25, 1997, at approximately 2:20 p.m., school resource officer (SRO) Fowler Goodowens observed the appellant and a passenger drive onto the grounds of Kenwood High School in Clarksville, Tennessee, and park in the student parking lot. Officer Goodowens did not recognize the vehicle as belonging to a student nor did see the parking decal used by students to identify their vehicles. Pursuant to his duties as an SRO, Officer Goodowens decided to investigate to determine if the unknown vehicle belonged to a truant or someone who needed assistance. Officer Goodowens parked partially behind the appellant's vehicle, and approached the appellant. Officer Goodowens looked inside the vehicle, and noticed an open, partially consumed container of beer underneath the passenger's legs.

Officer Goodowens asked the appellant to state his reason for being on campus. The appellant replied that he was there to pick up Junior Kelly, whom the officer knew was not a student at Kenwood High School. Officer Goodowens asked the appellant and his passenger to produce identification and each produced a driver's license. The officer proceeded to his car with the licenses to obtain further information, and discovered that the appellant's license had been revoked. Officer Goodowens returned to the appellant's vehicle, asked the appellant to step out of the car, and placed the appellant under arrest for driving on a revoked license. After being placed in the police car, the appellant asked the officer to get the appellant's jacket from the back of his car and remove the appellant's money from his jacket pocket. Pursuant to the appellant's request, Officer Goodowens searched the appellant's jacket for the money. In the pockets of the jacket, Officer Goodowens discovered twenty dollars in cash and 2.9 grams of crack cocaine. Officer Goodowens placed the appellant under arrest for the possession of more than .5 grams of cocaine. There was no drug paraphernalia in or around the appellant's car or on the appellant's person. A search of the passenger revealed that he possessed one hundred and eighty dollars in small bills.

The appellant filed a motion to suppress the evidence obtained as the result of an unlawful detention because the officer did not have reasonable suspicion to stop and detain him. The trial court held a hearing on July 10, 1998, and denied the motion to suppress. A Montgomery County jury heard the appellant's case in November of 1998. The jury could not reach a unanimous verdict. Accordingly, the trial court declared a mistrial.

On January 20, 1999, pursuant to a new trial, a jury convicted the appellant of possession of cocaine in excess of .5 grams of cocaine with intent to deliver, a class B felony. Tenn. Code Ann. § 39-17-417 (a)(2), (c)(1)(1997). The jury further found the appellant guilty of possession within 1,000 feet of a school in violation of the Drug-free School Zones Act, and accordingly the conviction was enhanced to a class A felony. Tenn. Code Ann. § 39-17-432(b)(1997). The appellant pled guilty to driving on a revoked license, a class B misdemeanor. Tenn. Code Ann. § 55-50-504(a)(1)(1998). The trial court sentenced the appellant to thirty days incarceration in the county jail for driving on a revoked license and to fifteen years incarceration in

the Tennessee Department of Correction for possession of cocaine with intent to deliver, with the sentences to be served concurrently.

## II. Analysis.

The appellant appeals his conviction of possession of cocaine with intent to deliver. The appellant argues that: (1) the trial court erred in denying the appellant's motion to suppress evidence seized as a result of an unlawful detention; (2) the trial court erred in denying the appellant's motion for judgment of acquittal with regard to possession with intent to sell or deliver at the close of the State's case in chief as the evidence was insufficient to support the conviction; (3) the trial court erred by allowing the arresting officer to testify that the passenger in the appellant's car had a certain amount of cash in his possession; (4) the trial court erred by giving supplemental instructions to the jury without first putting the instructions in writing; (5) the trial court erred by repeatedly referring to the prosecutor as "General" in the presence of the jury throughout the proceeding; and, (6) the prejudicial effect of these errors cumulatively requires reversal of the appellant's conviction.

### A. Unlawfully Seized Evidence

The State, as the prevailing party at the suppression hearing, is entitled to the strongest legitimate view of the evidence presented at the suppression hearing, as well as all reasonable and legitimate inferences that may be drawn therefrom. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Questions concerning witness credibility, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact, not the appellate courts. State v. Pruett,788 S.W.2d 559, 561 (Tenn. 1990). Accordingly, as long as the evidence preponderates in favor of the trial court's findings of fact, those findings will be upheld. Odom, 928 S.W.2d at 23. However, the application of the law to the facts found by the trial court is a question of law subject to de novo review by this court. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The appellant argues that the trial court erred in denying his motion to suppress evidence seized as a result of an unlawful detention. He argues that Officer Goodowens needed reasonable suspicion to approach and detain him and that the officer had no such reasonable suspicion. Therefore, the appellant claims any evidence obtained after the illegal detention is tainted and rendered inadmissible. See Oregon v. Elstad, 470 U.S. 298, 105 S. Ct. 1285, 1287 (1984).

The Fourth Amendment to the United States Constitution states that people have the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Furthermore, the Fourth Amendment applies to the states through the Fourteenth Amendment. Mapp v. Ohio, 367, U.S. 643, 655, 81 S. Ct. 1684, 1691 (1961). Likewise, Article I, Section 7 of the Tennessee Constitution declares that "people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures." Moreover, Article I, Section 7 has been construed to be "identical in intent and purpose with the Fourth Amendment." State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997).

However, this does not mean that all police contact with citizens rises to the level of a seizure. In Terry v. Ohio, 392 U.S. 1, 19, n.16, 88 S. Ct. 1868, 1878, n.16 (1968), the Supreme Court stated that "only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Moreover, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Id. The Supreme Court further explained that a seizure occurs "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980). Therefore, we must first determine at what point a seizure took place, because only when an officer's contact with a person impermissibly intrudes upon his or her privacy or personal security will constitutional protections be implicated. State v. Daniel, 12 S.W.3d 4420, 424 (Tenn. 2000).

In applying the reasonable person standard of Mendenhall to the instant case, it is clear that Officer Goodowens needed no reasonable suspicion to first approach the appellant's vehicle. It has been well established that police "may approach a car in a public place and ask for driver identification . . . without any reasonable suspicion of illegal activity." State v. Wilhoit, 962 S.W.2d 482, 486 (Tenn. Crim. App. 1997)(citing State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993)); see also Florida v. Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991). An officer merely approaching a parked vehicle would not make a reasonable person feel that he or she was not free to leave. Id.

However, police contact with a citizen would become a seizure if, for example, the officer "retain[ed] a citizen's identification or other property" or "physically restrain[ed] a citizen or block[ed] the citizen's path." Daniel, 12 S.W.3d at 426. There is evidence in the record to suggest that Officer Goodowens parked his police car behind the appellant, partially blocking the appellant's path.[1] It is unclear from the record whether or not the appellant was seized when Officer Goodowens parked behind him. While the trial court did not specifically address the issue of whether there was a seizure when the officer pulled his car behind the appellant's car, the trial court did find, based upon specific facts, that the officer had "reasonable suspicion to justify the stop."

As an SRO, Officer Goodowens was especially familiar with Tenn. Code Ann. § 49-6-2008(1997) which states:

> (a) In order to maintain the conditions and atmosphere suitable for learning, no person shall enter onto school buses, or during school hours, enter upon the grounds or into the buildings of any school, except students assigned to that bus or school, the staff of the school, parents of students, and other persons with lawful and valid business on the bus or school premises.

---

[1] Upon cross-examination by the appellant's counsel at the suppression hearing, Officer Goodowens testified as follows:

Q: You pulled in behind his vehicle, didn't you?

A: Yes, ma'am.

Q: You blocked it?

A: I was kind of catty-cornered. I don't know if I was totally blocking the vehicle or not.

(c) A violation of subsection (a) is a class A misdemeanor.

Officer Goodowens had reasonable suspicion to believe that the appellant was violating Tenn. Code Ann. § 49-6-2008(a), and acted lawfully in approaching the appellant to investigate. The appellant was on school grounds, and was not a parent of a student, nor was he a student himself. The appellant did not have a school parking decal on his vehicle. Officer Goodowens also knew that the appellant could not be on school property to pick up Junior Kelly because Mr. Kelly was not a student at Kenwood High School. Officer Goodowens was justified in approaching the appellant for the purpose of investigating the appellant's possible criminal behavior, even if the officer's belief did not rise to the level of probable cause. Terry, 392 U.S. at 22, 88 S.Ct. at 1880.

Furthermore, even if Officer Goodowens did not seize the appellant when the officer parked behind the appellant, a seizure definitely took place when Officer Goodowens took the appellant's driver's license in order to check for additional information. See Daniel, 12 S.W.3d at 425-427; see also Florida v. Royer, 460 U. S. 491, 502, 103 S. Ct. 1319, 1326-27 (1983)(plurality opinion). A reasonable person would not feel free to leave after a police officer confiscated their driver's license. Id. Generally, an officer would need at least reasonable suspicion to detain a person for further investigation. Id. at 428. Here, Officer Goodowens more than met that burden. When Officer Goodowens took the appellant's license, he had probable cause to believe that the appellant and his passenger were violating at least two laws, trespassing on school property and possessing alcoholic beverages on school property. Tenn. Code Ann. §§ 49-6-2008(a), 39-17-715(a)(1997).

As a result of further checking the appellant's license, Officer Goodowens discovered that the appellant was driving on a revoked license, a class B misdemeanor. An officer witnessing a misdemeanor generally issues a citation requiring the offender to appear in court. Tenn. Code Ann. § 40-7-118(b)(1)(1997). Moreover, there is no accompanying search incident to arrest when a citation is issued. See State v. Chearis, 995 S.W.2d 641, 644 (Tenn. Crim. App. 1999). However, if the officer reasonably believes that the offender will continue to violate the law he is being charged with after the citation is issued, then a citation is inappropriate and an arrest should be made instead. Id.; see also Tenn. Code Ann. § 40-7-118(c)(2). In this case, because the offense was driving on a revoked license, if Officer Goodowens merely cited the appellant, the appellant would have little choice but to drive away in continuing violation of the law. Furthermore, Officer Goodowens also had at least a reasonable suspicion that the passenger had been consuming alcoholic beverages and might not be able to legally drive the car. Therefore, Officer Goodowens properly arrested the appellant and took him into custody.

Officer Goodowens testified that, after being placed in the police car, the appellant requested that the officer retrieve the appellant's jacket from the backseat of the car and remove the appellant's money from the pockets. The appellant effectively gave Officer Goodowens consent to search the jacket because the officer was acting upon the direction of the appellant. Officer Goodowens discovered the crack cocaine while searching the jacket for the appellant's money. In any event, even if the appellant had not consented to the search of the jacket, the officer nevertheless had the authority to search the appellant's jacket, as well as the rest of the contents of the vehicle's passenger compartments, as a search incident to a lawful arrest. See New York v. Belton, 453 U.S.

454, 457, 101 S.Ct. 2860, 2862 (1981), State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992). Based on the foregoing, we conclude that the officer was acting legally at all times during this incident and therefore the drugs were properly admitted into evidence.

## B. Sufficiency of Evidence

The appellant contends the trial court erred in denying his motion for judgment of acquittal with regard to possession with intent to sell or deliver at the close of the State's case in chief as the evidence was insufficient to support the conviction. Tennessee appellate courts grant considerable weight to the verdict of a jury in a criminal trial. A jury conviction essentially replaces the presumption of the defendant's innocence with a presumption of guilt, shifting to the appellant the burden of proving to this court why the evidence will not support the jury's findings. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must demonstrate that no "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). The appellant has failed to meet this burden.

In order to convict the appellant of possession of cocaine with the intent to deliver, the State was required to prove that the appellant knowingly possessed more than .5 grams of cocaine with the intent to deliver the cocaine within 1,000 feet of a school. Tenn. Code Ann. §§ 39-17-417 (a)(2) & (c)(1),-432(b). There is no dispute that the appellant possessed the drugs and that the appellant was on school property at the time of possession. However, the appellant contends that the evidence was insufficient to prove his intent to deliver the drugs.

Intention to possess a controlled substance for the purpose of sale or delivery may be inferred from the amount of a controlled substance possessed by an offender, along with other relevant facts surrounding the arrest. Tenn. Code Ann. § 39-17-419 (1997). In this case, the appellant possessed 2.9 grams of crack cocaine in large chunk form. Officer Goodowens testified at trial that, in his experience as a narcotics officer, that amount is greater than the .1 gram rocks a person would normally possess for personal use. See Chearis, 995 S.W.2d at 645. Officer Goodowens further testified that the appellant did not appear to be under the influence of drugs. Id. The appellant also had no paraphernalia in his possession to indicate that he possessed the drugs for his personal use. Id. Officer Goodowens testified that the person the appellant had allegedly come to the school to see was not a student at that school and therefore the appellant had no other legitimate reason to be at the school at that time of day. As the ultimate trier of fact, it is the jury's role to weigh the evidence and draw inferences from the testimony accordingly. Pruett, 788 S.W.2d at 561. Based upon the evidence adduced at trial, the jury could have found the existence of all the elements of possession of cocaine with intent to deliver beyond a reasonable doubt. This issue is without merit.

## C. Passenger's Cash

The appellant claims that the trial court erred by allowing the arresting officer to testify that the passenger in the appellant's car had a certain amount of cash in his possession. The appellant argues that the $180 in small bills in the passenger's possession lacked relevance to the

appellant's guilt. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. The evidence that the passenger possessed a significant amount of cash in small bills indicates the appellant's access to ready change if needed to complete a drug sale. However, even if the admission of the passenger's cash was error, we conclude that it was harmless. There is no evidence to suggest that the admission of this fact into evidence prejudiced the appellant and affected the jury's verdict, as there was sufficient evidence without this fact to convict the appellant. Tenn. R. App. P. 36(b). This issue is without merit.

### D. Supplemental Instructions

In the midst of deliberation, after receiving the original, written jury instructions, the jury asked the judge to clarify the difference between the sale of and the delivery of a controlled substance. The trial court gave a supplemental instruction orally to the jury. The appellant argues that the trial court erred by giving supplemental instructions to the jury without first putting the instructions in writing.

Tenn. R. Crim. P. 30(c) mandates that, in felony cases, "every word of the judge's instructions shall be reduced to writing before being given to the jury." Our supreme court has stated that Rule 30(c) is "valid and imperative and not merely directory, but must be observed." Taylor v. State, 369 S.W.2d 385, 388 (Tenn. 1963). Nevertheless, a trial judge has the authority to give supplemental instructions in response to jury questions. State v. Forbes, 918 S.W.2d 431, 451 (Tenn. Crim. App. 1995).

Nevertheless, it has also been previously established that, while the original jury instructions are to be given great consideration, supplemental jury instructions are purely for purposes of clarification and should not be afforded the same weight as the original instructions. State v. Bondurant, No. 01C01-9501-CC-00023, 1996 WL 275021, at *14 (Tenn. Crim. App. at Nashville, May 24, 1996). If the supplemental instructions were written down and given to the jury, there is the risk that the jury would afford those instructions inappropriate or undue weight. Id. Accordingly, "supplemental charges or instructions merely purporting to elucidate a previous instruction . . . are not within Rule 30(c)'s written requirement." Id.

Moreover, there is further case law to suggest that if a trial judge merely rereads the previous written instruction without commenting on specific evidence or testimony, there is no reversible error in the trial court's oral instruction. See Taylor, 369 S.W.2d at 388; State v McKheen, No. 03C01-9706-CR-00209, 1998 WL 40229, at*7 (Tenn. Crim. App. at Knoxville, February 3, 1998)(perm. app. denied Tenn. 1998). However, the appellant has failed to include the original jury instructions in the record for our review. A decision as to whether the judge was merely rereading an instruction, as the record indicates, or was giving entirely new instructions would require examination of those original instructions. The burden to provide a complete record for our review is on the appellant. Tenn. R. App. P. 24. This incomplete record therefore precludes our

review of this issue.  <u>State v. Draper</u>, 800 S.W.2d 489, 593 (Tenn. Crim. App. 1990).  Accordingly, we consider this issue waived.  <u>State v. Locke</u>, 771 S.W.2d 132, 138 (Tenn. Crim. App. 1988).

E.  Prosecutor as "General."

The appellant also contends that the trial court erred by repeatedly referring to the prosecutor as "General" in the presence of the jury throughout the proceeding.  The appellant claims that this title gave the prosecution an elevated status in the eyes of the jury, denying the appellant a fair trial.  The official titles of Tennessee prosecutors are Attorney General, Assistant Attorney General, District Attorney General, or Assistant District Attorney General.  Tenn. Code Ann. § 8-7-101 *et. seq.*  The shortened honorific "General" stems from those titles.  It is long standing tradition in the state of Tennessee for trial judges to refer to the prosecutors as "General," in much the same fashion as attorneys acknowledge judges as "Judge" or "Your Honor."  There is no unfair prejudice to the appellant in a trial where the judge refers to the prosecutor by his or her official title.  Tenn. R. App. P. 36(b).  Furthermore, the appellant has made no specific allegation of how referring to the prosecution as "General" has prejudiced his case.  A mere conclusory statement of error is not enough to establish prejudice. This issue is without merit.

F. Cumulative Error

The appellant argues that even if, standing alone, the errors he alleges are insufficient to warrant a reversal of his conviction, the errors cumulatively amount to reversible error.  Because we found no merit to any of the appellant's allegations of error, we need not address any possible cumulative effect.

### III. Conclusion.

Because the appellant has failed to carry his burden on appeal, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE